FRANCIS A. LYMAN *vs.* INHABITANTS OF AMHERST.

In an action against a town for an injury received by a traveller through a defect in a highway, the fact that, knowing of the defective place, he voluntarily attempted to pass it, is not conclusive of a want of due care on his part, but only a circumstance for the jury in determining that question.

On the trial of an action against a town for an injury received by a traveller whose horse slipped in a highway and was drawn backwards over a bank by the weight of the wagon, whereby he was thrown out and injured, if the judge requires the jury to find that the want of a sufficient railing along the bank was the sole cause of the injury, in order to return a verdict for the plaintiff, the defendants have no ground of exception to his refusal of rulings as to whether the highway was defective from the nature of its material at the place where the horse slipped.

A railing by the side of a highway is sufficient within the Gen. Sts. *c.* 44, § 22, if it is suitable for the ordinary exigencies of travel upon such a road at such a place.

In an action against a town, on the Gen. Sts. *c.* 44, § 22, by a traveller whose horse and wagon with its load, weighing together about thirty-two hundred pounds, fell off the highway through the insufficiency of a railing by the side of it to resist their weight falling upon it from some height, the question whether the railing should have been of sufficient strength for that purpose is for the jury upon all the circumstances of the case.

TORT on the Gen. Sts. *c.* 44, § 22, for injuries alleged to have been received by the plaintiff through a defect in a highway leading from Amherst to Granby, which the defendants were bound to keep in repair, and on which he was travelling with due care at the time of his injury. The answer admitted the obligation of the defendants to keep the highway in repair, and denied all the other allegations of the plaintiff.

At the trial in the superior court, before *Pitman*, J., the plaintiff introduced evidence tending to show that he was a peddler of tin ware, and on the afternoon of September 15, 1869, had gathered a load of old iron and rags, weighing about 1250 pounds, in barter for his ware ; that he loaded a wagon (which he described in his testimony as a " one horse lumber wagon ") with the iron and rags, at a place in South Amherst, and between ten and eleven o'clock at night started (with his son, who was seven years old) to drive to Springfield by moonlight, and in his route had occasion to travel on the highway in question, which led across what was called a mountain ; that he was acquainted with the road, and had travelled over it several times, and twice since the previous March ; that the horse was a kind and well broken ani-

mal, which he had driven during the whole summer; that the road up the mountain was crossed by water-bars, at which he stopped the horse several times, and just before eleven o'clock, on the ascent, the horse, after passing a water-bar, slackened its pace, and the plaintiff stopped it, with the wagon half way over the bar; that, when he started the horse, it strained to advance, but apparently lost footing by stepping on something in the road, and fell on its knees; that, on being started again, it fell on its knees a second time, and the loaded wagon dragged it backwards and sidelong, and off a bank into a ravine, at a place, fifteen feet below the water-bar, where there was no fence by the side of the road, except some rails on the boundary of the adjoining lot, below the bank, which were placed there to prevent cattle from entering on the highway, and which the wagon broke through; that the horse, while dragged backwards, exerted itself to resist and to pull forwards, but never regained control of the load after the backward motion began; that what it stepped upon, at or about the time it lost footing, was a stone, partly imbedded in the road and somewhat smaller than a man's fist; that in the fall of the horse and wagon off the bank the plaintiff was thrown to a distance of thirty feet from the wagon, and seriously injured; that the whole weight of the horse, wagon and load was about 3200 pounds, the slope of the road up the mountain was about fifteen feet in the hundred, and the width of the road from twelve to fifteen feet; that the road was built of the soil on which it was located, (which consisted of loam and gravel mixed with small stones,) and was level, and somewhat soft, one witness testifying that " the extent of the softness is, that a loaded wagon with wheels of two inches tire in breadth would sink in from half an inch to an inch;" and that the railing, at the place where the wagon broke through it, was about even with the top of the bank in height, and was " not very good," and the selectmen of the town had been notified, five years before, that the place was dangerous, but neglected to repair it. The plaintiff testified that it was only " an instant " between the time when the horse last fell on its knees, and the time when the wagon fell over the bank.

The defendants did not dispute that the railing was " insuffi-
rient to prevent teams from going off, that might come upon it in
the manner in which this did ; " but contended that certain evi-
dence, which they introduced, tended to show that, " in conjunc-
tion with the trees there standing, it was sufficient to protect the
public travelling along in the usual and ordinary manner."

The plaintiff contended that the highway was defective, not
only for the insufficiency of the railing at the place where the
wagon broke through it, but also for insufficiency of the road-bed,
by reason of the light and loose materials of which it was com-
posed at the place where the horse lost footing.

The defendants prayed for the following instructions to the
jury :

" 1. If the plaintiff was well acquainted with this road, and
knew its steepness and its dangers, and knowing and understand-
ing these undertook in the night time to pass over the mountain
by this road with a heavy load, he undertook it at his peril, was
not in the exercise of due care, and cannot recover.

" 2. A stone of the size described by the witnesses and partially
imbedded in the road-bed would not be a defect in a road of the
character of this road, where the accident occurred.

" 3. If the road in this case was of the soil where it was lo-
cated, was substantially level and flat from side to side, from
twelve to fifteen feet wide, but the soil was gravel, with small
stones intermingled, not larger than a walnut, and was sc soft
that a loaded team-wagon of two inches tire would sink in from
a half to one inch, the road would not be defective on that ac-
count.

" 4. There is no evidence in the case that the road-bed was de-
fective.

" 5. If the jury shall find that the road-bed was not defective,
there is no evidence in the case to warrant a verdict for the plain-
tiff.

" 6. If the plaintiff's horse from any cause became uncontrol-
lable, and the driver could not guide or direct him, and in such
condition backed or was dragged down the mountain a consider-
able distance to the place of the accident, and was then precipi

tated over the side of the road and down a bank, and the driver at no time was able to regain control of the horse, the plaintiff cannot recover.

" 7. If the load was so great that the horse could not draw the same, and in attempting so to do was dragged, in spite of all his efforts, to the place of accident, and down the bank at the side of the road, the plaintiff cannot recover.

" 8. If any viciousness of the horse contributed to the injury, the plaintiff cannot recover.

" 9. If a reasonable railing would not have prevented the accident, its absence is no ground of recovery by the plaintiff.

" 10. The defendants were not bound to provide a railing at this place, of such strength as would resist and stay a team, loaded as this was, violently precipitated upon it backwards from some considerable distance above.

" 11. If the only defect was the want of a sufficient railing at the place of accident, then under the circumstances of this case the plaintiff cannot recover.

" 12. The evidence in this case shows that the plaintiff did lose the control of his horse and did not regain it before the accident, and that the loss of control was more than momentary or temporary.

" 13. There is no evidence in this case upon which the plaintiff can recover."

The judge adopted and gave the eighth and ninth instructions thus prayed for; but refused to adopt the others in terms, or except as follows :

" In connection with the first prayer he said to the jury that they might consider all the elements set forth in the prayer, so far as proved, in determining whether the plaintiff was in the exercise of ordinary care.

" As to the second prayer, he instructed them that the mere existence of a single stone so imbedded as stated in the prayer would not of itself authorize a jury to find the road defective, but that he did not feel bound to withdraw any piece of evidence concerning the condition of the road-bed from the consideration of the jury, in determining whether upon the whole case it was or not reasonably safe and convenient.

" As to the tenth prayer, he ruled that the town was bound only to provide a railing suitable for the ordinary exigencies of travel upon such a road at such a place."

Then, after general instructions " that the plaintiff must prove that there was a defect in the road which had existed over twenty-four hours or of which the defendants had reasonable notice, that this defect was the sole cause of the accident, that the plaintiff was at the time using the road as a traveller with a suitable and manageable team, and that he was in the exercise of due care and skill in all respects," he further instructed the jury upon points raised by the defendant's prayers, as follows : " If the plaintiff was travelling in the exercise of ordinary care, diligence and skill in reference to his horse, harness, carriage and load, and in his use of the road, and if the road-bed was insecure, defective and not in suitable repair at the place where the horse lost his foot-hold, and if in consequence of this, and without any fault or vice on the part of the horse or any want of care or skill in the driver. the horse was overcome by the load, (the load also being a suitable one,) and precipitated down the bank for want of a suitable railing, then the defendants are liable."

" The judge also read to the jury the ruling of Mr. Justice Foster as reported in *Babson* v. *Rockport*, 101 Mass. 93, 97, and stated that this had been upheld by the supreme judicial court ; that, applying the general doctrine there laid down to the case at bar, if the plaintiff was travelling as aforesaid, and if the horse, from stepping on a stone, or from the nature of the road-bed, whether it was in law defective or otherwise, was overcome in his forward motion, and drawn backwards by the load, and if the horse was, without any viciousness or fault, endeavoring and exerting himself to regain his footing and to hold the road, and the plaintiff was also doing all that was practicable in regard to the team, until the wagon reached the point where the alleged defect by want of railing existed, and the jury are satisfied that the horse and wagon did not practically and substantially pass beyond the control of the plaintiff except momentarily, and that the plaintiff would have regained control immediately if there had been no defect by reason of want of suitable railing, and the

plaintiff has proved the other essentials for the maintenance of his action, then the defendants are liable."

The jury found for the plaintiff with damages in the sum of $4000, and the defendants alleged exceptions.

*G. M. Stearns,* for the defendants. The first ruling asked for should have been given; for if the plaintiff not only previously knew of the dangers of the road, as in *Whittaker* v. *West Boylston,* 97 Mass. 273, and cases there cited, but at the very time of passing over the alleged defective portion of it knew and understood the danger he was encountering, and voluntarily undertook the passage, he cannot recover. *Horton* v. *Ipswich,* 12 Cush. 488. *Wilson* v. *Charlestown,* 8 Allen, 137.

The third and fourth should also have been given. The third was in substantial accordance with the evidence, and was a proper question of law. The court should have given instructions as to what would constitute a defect. *Macomber* v. *Taunton,* 100 Mass. 255. *Billings* v. *Worcester,* 102 Mass. 329. This road was a mountain road between two small towns. It was impracticable to transport other soil there as the natural soil washed away. Towns are held only to make their roads reasonably safe considering all circumstances. *Stanton* v. *Springfield,* 12 Allen, 566. *Nason* v. *Boston,* 14 Allen, 508. 100 Mass. 255. 102 Mass. 329.

By the fifth prayer, the defendants asked for a ruling that if the horse, without their fault, lost ability to draw or hold the load, and involuntarily and helplessly was drawn backward down the hill, as described in the evidence, then they were not liable because there was an insufficient railing. The evidence shows that the horse was wholly beyond control of the driver, and wholly unable to control the load; that there was not a momentary loss of control which would have been at once regained, but a total and substantial loss of control. There was no evidence upon which it was proper to submit to the jury the question which was submitted by the final instruction given by the court. The burden being upon the plaintiff to show that his loss of control was only momentary, and there being no evidence to show that condition of things, the plaintiff cannot recover, if the road-bed was not defective. *Titus* v. *Northbridge,* 97 Mass. 258. *Fogg*

v. *Nahant*, 98 Mass. 578.   *Stone* v. *Hubbardston*, 100 Mass. 49. *Babson* v. *Rockport*, 101 Mass. 93.

The sixth prayer was in accordance with the instructions of Mr. Justice Foster in *Babson* v. *Rockport*, which have been declared by this court to be accurate.

The court refused the seventh prayer, but gave no distinct and independent instructions as to what would be the legal result if the horse was overcome by reason of being too heavily loaded. The plaintiff was not entitled to recover, if the horse was drawn backward by too heavy a load, and the overloading thus contributed to the accident.

The tenth prayer especially should have been granted. As matter of law, towns are not bound to provide railings against such occurrences as this one.   There was no dispute as to what was its character and violence, and it was not proper to submit to the jury whether or not it was an ordinary exigency of travel. And the eleventh prayer also should have been granted ; because an ordinary railing would not have resisted such a load and such violence, the town was not called upon to provide a railing against such accidents, and if there was no other defect than want of railing the horse must have been drawn down the hill by some fault of the plaintiff.

As to the twelfth prayer, the court should not have left it to the jury to determine the questions stated therein.   There was no conflicting testimony upon it.   And on the whole case the defendants were entitled to a verdict by direction of the court, as requested in their thirteenth prayer.

*C. Delano*, for the plaintiff.

MORTON, J.   The court is of opinion that the instructions given at the trial were sufficiently favorable to the defendants. The evidence tended to show that, while the plaintiff was travelling over a steep road in Amherst, his horse, either by stepping on a rolling stone, or because of the soft and yielding character of the road-bed, for a moment lost the control of his load, and was drawn backward, by its weight, over the banks of the road. The alleged defect was the want of a suitable railing at the place where he went over.   Under the instructions, the jury were re-

quired to find that the plaintiff had a manageable horse, without any fault or vice which contributed to the accident; that the load was suitable; that the horse was not at any time beyond the control of the driver, except momentarily; that the plaintiff was in all other respects in the exercise of due care; that the road was defective for want of a suitable railing; and that such defect had existed for more than twenty-four hours, and was the sole cause of the injury. Upon these facts it is clear that the town is liable. *Babson* v. *Rockport,* 101 Mass. 93.

The defendants presented thirteen prayers for instructions. The presiding judge adopted the second, eighth and ninth, and refused the others. We think such refusal was right.

1. The fact that the plaintiff was acquainted with the road does not necessarily prevent his recovering, and the court properly left this fact, in connection with the other evidence, to the jury, to be by them considered upon the question of due care on the part of the plaintiff. *Frost* v. *Waltham,* 12 Allen, 85.

2. The third, fourth and fifth prayers relate solely to the question whether the road-bed was defective. We do not see that this question was material. Whether the road-bed was defective or not, the town would be liable upon the other facts which the jury were required to find under the instructions. *Babson* v. *Rockport,* 101 Mass. 93.

3. The instructions given upon the subject embraced in the sixth prayer were in conformity with the decision in *Babson* v. *Rockport.*

4. The instructions given required the jury to find that the load was a suitable one, and thus adopted, in substance, the seventh prayer.

5. In answer to the tenth prayer, the court correctly stated the rule to be, that " the town was bound only to provide a railing suitable for the ordinary exigencies of travel upon such a road at such a place." Whether such a railing would resist and stay a team loaded as this was, was a question of fact for the jury.

6. The proposition stated in the eleventh prayer cannot be sustained as law. We have already seen that upon the facts of this case, as found by the jury, the town is liable.

7. The last two prayers involve questions of fact which are for the jury. It was for them to determine whether there was any loss of control of the horse, and if so, whether it was momentary. There was some evidence upon this, and upon all the other issues in the case, which was properly submitted to the jury.

Upon the whole case, we are of opinion that the defendants were not aggrieved by any of the rulings or refusals to rule at the trial. *Exceptions overruled.*