### JAMES F. GERALD *vs.* CITY OF BOSTON.

In an action against a city, under the Gen. Sts. *c.* 44, § 22, for injuries sustained by a traveller in a public street, there was evidence that the accident occurred in winter; that at the time, and for some time before, a strip of the sidewalk on one side of the street was occupied under license from the city by workmen on an adjoining building; that movable barriers were usually set at each end of the strip, and along the side of it towards the carriageway, to exclude travellers from it;. that along the strip, and outside of the barriers, many travellers had beaten a path in the snow, over which they passed the obstructed place, instead of crossing the street to do so; that in this path there was a pile of snow, trodden hard, several feet long and wide, fifteen or twenty inches high, and rounding on top; and that the plaintiff slipped on this pile and fell and was injured, while attempting to pass the obstructed place over the beaten path. There was conflicting evidence as to whether the barrier along the strip reached to the edge of the carriageway; whether the pile of snow lay wholly in the carriageway, or wholly on the sidewalk between this barrier and the carriageway, or partly on each of them; and also as to whether the barriers were set, or other notice of the obstruction of the strip of sidewalk was given to the plaintiff, at the time of the accident. *Held,* that the questions, whether the plaintiff was justified in going on the outside of the sidewalk upon the part of the street wrought and used especially for carriages; whether in doing so under the circumstances he used due prudence and care; and whether the pile of snow was, in the place where it lay, a defect of which he had a right to complain; were all for the jury.

TORT, under the Gen. Sts. *c.* 44, § 22, for injuries resulting to the plaintiff from a defect in Court Street in Boston, a highway which the defendants were bound to keep in repair.

At the trial, before *Wells*, J., it appeared that Court Street led westerly out of Washington Street; and there was evidence tending to show that, from some time in the summer of 1868 until after the time of the plaintiff's accident, which occurred on February 13, 1869, the sidewalk, for a considerable distance along the south side of Court Street, beginning at the corner of Washington Street and extending along a block which was called Sears's Building, was occupied, under a license from the city, by workmen who were constructing the building, and that barriers, temporary in their nature, and often removed to bring in mate-

rials for their work, were placed at each end, and also on the side towards the carriageway, of the strip of sidewalk thus occupied, to exclude travellers from using it.

There was also evidence tending to show that on February 13, 1869, between two and three o'clock in the afternoon, the plaintiff came from Washington Street into Court Street, and, while passing along Court Street, in front of Sears's Building, slipped and fell and broke his leg ; that at the place where he fell there was, and had been for several days, " an accumulation of snow, fifteen or twenty inches high in the highest part, in the shape of a hummock, oval or rounding on top, trodden hard and dirty, and extending four or five feet parallel with the direction of the street, and three or four feet across," which constituted the alleged defect ; that at the time of his fall he was travelling over this hummock ; that he saw persons passing over it before him, and some persons coming over it from the opposite direction ; that he saw no barriers ; that " there was a trodden path outside of the place where the barriers along the edge of the sidewalk stood when in place, along which for some days before the accident persons had been passing, and it was in this path that the alleged obstruction lay and he slipped and fell ; " and that " the police officers, whose duty it was to see to the condition of the street, knew that travellers were in the habit of passing there."

It appeared that the plaintiff lived in the country, and there was no evidence that he knew of the condition of the street or sidewalk, until he reached the street just before he fell. There was conflicting evidence as to whether the line of the barrier along the sidewalk reached to the edge of the sidewalk adjoining the carriageway ; as to whether the hummock of snow lay wholly on the carriageway, or on the sidewalk outside of the line of that barrier, or on both ; and as to whether, at the time of the accident, the barriers, or any of them, were in position, or there was any other provision for notice to travellers of the occupation of the sidewalk or any part of it by the workmen.

The plaintiff requested the judge to rule " that, if the accident resulted from a defect within the general course and direction of travel, where travellers were accustomed, at the time, to pass

along the south side of Court Street on foot, and within the limits of the way, and the city or its officers had reasonable notice of such general course of travel, and the plaintiff met with the accident while following such general course and direction of travel, and using ordinary and reasonable care, then the defendants are liable, although the defect might be outside of the edge of the sidewalk." The judge refused so to rule, but did instruct the jury, upon the plaintiff's request, "that if the limits of the way on the south side of Court Street, intended for the use of travellers on foot, were so concealed by snow as to be imperceptible to the observation of persons using the way with ordinary care, and the accident to the plaintiff resulted from a defect within the general course and direction of travel, where travellers were accustomed, at the time, to pass along that side of the street on foot, and the plaintiff received his injury while following such general course of travel with ordinary and reasonable care, then the defendants are liable, although the defect might be outside of the edge of the sidewalk." And he further instructed them, among other things, as follows : " In the opinion of the court, the most material inquiry in this case arises upon the evidence as to barriers on the sidewalk. If a way is out of repair or unsafe, the public may be secured from danger therein either by a railing, or by sufficient notice of the defect. It is not necessary that the railing or barrier should be such as absolutely to exclude or prevent persons from going upon the way, if it be such as to put them upon their guard, and warn them that the way or walk is not then in condition to be used, and is not open or intended for use as such. If this walk was so secured, either by (1) barriers at the end, or (2) railing along the side, or (3) by anything making it apparent to every one that the walk was not at that time in condition or intended for use, so that the plaintiff had sufficient notice of such fact, but, disregarding such notice, chose to attempt to pick his way through or by the obstructions, he must take things as he finds them. The fact that others were doing the same does not affect the question of liability of the city, nor does the fact that a path had been·thus made outside the railing."

Some hours after the case was committed to the jury, they returned into court with this question in writing : " In the absence of the fence across the sidewalk at the Washington Street end, would the barrels and plank parallel with the sidewalk on Court Street be a sufficient warning ? " And thereupon the judge, in the presence of all the counsel, instructed the jury " that it made no difference whether it was by a barrier across the walk, or a railing along the side, or any other means, by which the traveller would be put on his guard against entering upon the unsafe walk ; as, if a man were to stand there and give them warning. The question for the jury is, whether the plaintiff was sufficiently warned, in any mode, that the walk was not then in condition to be used, and was not open or intended to be so used ; and did he disregard such warning, and attempt to pick his way through or around the railing or other obstructions ? " and, upon the plaintiff's request, he also instructed them, " that, if the railing did not include the whole width of the sidewalk, and there was a part of the sidewalk outside the railing, apparently left open for the use of foot travellers, the plaintiff would be entitled to use the portion of the sidewalk so left open, and to have it kept safe for such use, and if injured by reason of a defect therein, while so using it with due care on his part, he would be entitled to recover."

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*G. A. Somerby & L. S. Dabney,* for the plaintiff. The plaintiff had a right to have the jury pass on the question, whether, if the barriers (supposing there were any at the time) inclosed the whole sidewalk, he was in the exercise of reasonable care in following a beaten path outside of them and outside of the edge of the sidewalk, instead of crossing to the other side of the street. The ruling which the judge refused was adapted to submit this question to the jury. By the instructions given, they were precluded from finding for the plaintiff, if, when he fell, he was outside of the sidewalk, unless the limits of the sidewalk were concealed by snow, even although they might have been satisfied that a man in the exercise of reasonable care might well have elected

to pass outside of the obstruction, and outside of the sidewalk, in the carriageway, in preference to crossing the street.

*J. L. Stackpole,* for the defendants. The instructions accorded the right of a traveller to follow the course of travel when the limits of the sidewalk are imperceptible ; and are in conformity with the rule laid down in *Coggswell* v. *Lexington,* 4 Cush. 307, and *Hayden* v. *Attleborough,* 7 Gray, 338. In a thoroughfare of a populous city, it is not competent for foot passengers, by temporarily passing over a track in the carriageway, not for the purpose of crossing the street, to make it substantially a sidewalk, at a time when there is no difficulty in discerning the limits of the sidewalk.

WELLS, J. The questions whether the plaintiff was justified in going on the outside of the sidewalk upon the part of the street wrought and used especially for carriages, and whether in doing so under the circumstances he was in the exercise of due care and prudence, as well as whether the pile of snow upon which he slipped and fell was, in that place, a defect of which he had a right to complain, should have been submitted to the jury. *Raymond* v. *Lowell,* 6 Cush. 524. As the instructions were too restrictive in these respects, the verdict must be set aside.

*Exceptions sustained.*

Upon a new trial, the plaintiff obtained a verdict, on which judgment was rendered.