### ANNA Y. SNOW *vs.* INHABITANTS OF PROVINCETOWN.

Barnstable. Jan. 25.— Sept. 7, 1876. ENDICOTT & DEVENS, JJ., absent.

In an action against a town for injuries sustained by reason of the want of a railing to protect travellers from falling down an embankment just outside of the limits of a highway, which the defendant town was bound to keep in repair, the plaintiff, a girl nearly nineteen years old, testified that she was passing along the way on the side where the embankment was; that she saw a horse and cart stretched across the way; that she thought how she was going to get by, and that there was room enough to pass safely between the cart and the embankment; that it occurred to her she must be careful or she would fall; that she kept on, when the cart commenced backing towards her and she stepped aside, falling off the embankment and sustaining the injuries in question. The judge instructed the jury that the plaintiff must have been in the exercise of ordinary care, such as a person of ordinary prudence, of the plaintiff's sex and age, would commonly and might reasonably be expected to exercise under like circumstances, in determining whether she would attempt to pass while the street was obstructed by the horse and cart, and in selecting the place where to pass, and while passing, and at the time of the ac

cident. The jury found for the plaintiff. *Held,* that the instructions given were apt and sufficient, on the issue of due care on the part of the plaintiff, and that the evidence was sufficient to justify the verdict of the jury.

Tort for an injury occasioned by a defect in a highway in defendant town.

At the trial in the Superior Court, before *Pitman,* J., the evidence tended to show that the injury was received on High Street, a short street running at right angles with Commercial Street, and therefrom in a northwesterly direction; that the town was bound to keep the way in repair; that the alleged defect was the absence of a railing on the northerly side of the street, at a point about fifty-five feet from Commercial Street, at which point there was a bulkhead or embankment just outside of the limits of the street, extending from the side of the street to the depth of about four feet, and almost straight up and down, and without protection by a railing or fence; that at the bottom of the embankment was a yard, constituting a part of the premises of one Winslow; that the embankment was composed of sod turned bottom up, and that the body of the street was laid out in sods of the same kind; that the street at the point of the embankment was fourteen feet and seven inches wide; that the side opposite to the side where the accident occurred was made of earth banked up to the height of three feet above the street; and that on this embankment rested a wooden fence, two to three feet high.

The evidence tended to show that the plaintiff, who was nearly nineteen years old at the time of the accident, lived upon High Street, about three minutes' walk from the place of the accident, and had lived there all her life; that she had at different times visited the Winslow house, and had passed by the embankment two or three times daily for many years; that she had frequently noticed the embankment and the Winslow yard, and the absence of a fence or railing, and that there had been no fence or railing there for years.

The plaintiff testified that about ten in the forenoon of June 27, 1874, she turned from Commercial Street into High Street, intending to pass up the street to her home, and by the place where the accident occurred; that she then had in her right hand a pail with milk, and in her left hand two small bundles of

cloth; that, as she turned into High Street, she saw standing almost directly across the street, and at the point of the embankment, a horse harnessed to a two-wheel tip cart; that the horse was heading a little up High Street, and the upper wheel of the cart nearest and very near to the edge of the embankment; that she continued walking up the street and on the same side as the embankment; that when she had nearly reached the cart, she thought there was about the space of a foot between the tail of the cart and the edge of the embankment; that the teamster started the horse to give her room to go by, as she supposed; that she then thought there was room enough for her to pass safely; that it appeared to her that there was plenty of room to pass, and that she kept right on, and that, as she was passing the cart, it started and commenced backing towards her, and, fearing it would strike her, she stepped aside to her right and off the embankment and fell into the yard.

Upon cross-examination, she stated that she stepped aside voluntarily to avoid the cart, and did not then think or notice where she was about to step, nor think of the embankment, nor the fact that she was at the edge of the same; that the space between the cart and where she fell might not be more than a foot, leaving the weeds out which grew out of the edge of the embankment; that she had noticed that the weeds grew out before; that at the time she stepped aside she was watching the cart; that the cart did not strike her; that why she knew it did not was because there was no bruise upon her left side; that both before reaching the cart and up to the time of her fall there was no obstacle to prevent her seeing the place from the time she left Commercial Street; that she did not know where she looked, although she knew the embankment was there; that she was thinking of how she was going to get by, was thinking of getting by; that she did not think there was any difficulty; thought there was room enough. "I think it did occur to me that I must be careful or I should fall;" that before the driver started the cart, she thought she could not get by; that when she was behind the cart she thought it started; that she knew that the driver was unloading coal at the embankment for Winslow, and that, when he took his horse by the bits, he had got through unloading. In answer to the question, why she did not take hold

of the cart and prevent her fall, she answered that she could not, having both her hands full. " I could n't try; if I had had my hands free, I don't think I could have grasped the tail of the cart and saved myself from falling ; " also that she did not speak to the driver, nor he to her; that the driver, as she was about attempting to pass, was at the head of the horse with his hand on the bit.

The plaintiff called one Gifford, who then resided upon the same side of High Street as the embankment, who testified that he left his house to come down High Street, and passed down until he came to the tail of the cart; that he found the upper wheel plumb with the edge of the embankment, and that it was impossible for him to get by there ; that he then crossed the street, crept under the horse's neck upon the other side, and was proceeding down to, and had got to Commercial Street, when he met the plaintiff turning the corner ; that he stopped at the foot of High Street, and turned around from curiosity to see how the plaintiff would get by the horse and cart ; that he thought the teamster was trying to make room for her; that, as she approached, the driver took the horse's head and drew him a little ; that the cart must have moved, though he could not say it did; that she stopped or hesitated within two or three feet of the tail of the cart ; that then the cart commenced to back and was backing towards the edge of the embankment, and that while it was backing she began to walk ahead, and was behind the cart while it was backing, and that she then disappeared behind the embankment ; that he was anxious about her when she was about to pass between the cart and the embankment, and before she had actually reached it, for the reason that the cart was then backing; that the horse could not stand still where he was ; that it occurred to him that she had lost the favorable time for passing.  He also added upon cross-examination, " I think the driver had started up the horse a little, so that his nose was over a low fence.  I know it must have been, but I don't recollect the position of the horse's head; then the horse and team commenced to back slowly before she had actually started.  It is my impression, she had hesitated a while before starting."

The teamster was called by the defendant, and testified that he had been unloading his cart of coal by shovelling from one

side around the tail of the cart, there not being room sufficient to stand behind the cart; that he saw the plaintiff coming from Commercial Street; that he had got through delivering the coal by shovelling down the embankment; when he saw her he went to his horse's head, took hold of the bits and was proceeding to turn the head of the horse down the street to go to his store on Commercial Street, and was doing so and thus backing his horse, at which time the plaintiff was within a foot or two of the cart and on the side nearest Commercial Street; that he then heard a cry and saw the plaintiff upon the ground in the yard; that "the horse had moved his forward feet and given a half step. Just as soon as he moved I heard the noise. I did not see her go off." There was evidence tending to show that the cart and horse were in length fifteen feet, seven inches.

The defendant contended that the place of the fall was dangerous; that the plaintiff must have seen, before reaching the embankment, that it would be dangerous for her to pass between the cart and the embankment, and that she should have stopped or crossed over to the other side of the street; that there was evidence that the plaintiff was thrown or forced down the embankment by the driver's backing the team; that he saw her, or that she, through fear that the cart might back upon her, stepped aside and fell; and that, if there had been a reasonable railing at the place of the fall, she would have been injured by the backing of the cart near to or against such railing.

The defendant submitted various requests for instructions which, so far as they appear material, were as follows :

3. If the road and embankment at the place of the accident or fall were dangerous, and the plaintiff knew or had reason to believe that the road and embankment there were dangerous, before she had reached such dangerous place, and she, on reaching such dangerous place, fell down the embankment, these facts would constitute evidence of want of proper care on her part.

4. If the street was obstructed by the cart and horse, and the plaintiff saw the obstruction and the embankment and absence of railing at and opposite the end of the cart, and knew the dangerous character of the place, if it was dangerous, and the plaintiff in attempting to pass them fell, the jury should consider these facts, as some evidence of negligence on her part.

5. If the plaintiff came to the place where she fell, and saw or had reason to believe that it was dangerous to pass between the cart and the embankment, and there was on the other side of the street an opportunity to pass without danger, she would be bound to cross.

16. If the cart was being backed upon the plaintiff, and there had been a reasonable railing at the place where she fell, one question for the jury is, would she have been injured by being jammed, or bruised, between the cart and railing or otherwise, and if so, the plaintiff cannot recover for absence of a railing.

18. That if all the evidence of the plaintiff, relating to the time of the accident and fall, is equally consistent with care or negligence on her part, she cannot recover.

The judge refused to give the instructions requested, and instructed the jury as follows : " In order to recover, the plaintiff must satisfy the jury : 1. That the way was unsafe.   2. That the injury arose solely and proximately from the alleged defect. 3. That the plaintiff was in the exercise of ordinary care." Upon these points, the judge further instructed the jury as follows : " Towns are bound to erect a suitable barrier, railing or other adequate protection, where there is such risk of a traveller, using ordinary care in passing along the street, being thrown or falling into the dangerous place, that such protection is requisite to make the way itself safe and convenient.   If the negligence of a third party contributed to the injury, then the plaintiff cannot recover.   Care implies attention and caution, and ordinary care is such a degree of attention and caution as a person of ordinary prudence of the plaintiff's sex and age would commonly and might reasonably be expected to exercise under like circumstances.   Ordinary care has relation to the situation of parties and the business in which they are engaged, and varies according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which it is to be exerted.   The degree of care must vary with the apparent peril.   As applied to the present case, the plaintiff must have been in the exercise of ordinary care in travelling at the time ; must have exercised ordinary prudence in determining whether she would attempt to pass while the street was obstructed by the horse and cart, and in selecting

the place where to pass, and have used ordinary care while pass-
ing, and at the time of the accident.  As ordinary care depends
on apparent peril, the jury should consider all the facts proved
as to the obstruction of the street, and the condition of the em-
bankment, and the plaintiff's knowledge thereof, in determining
whether or not she exercised the degree of caution and observa-
tion required, under the rule of ordinary care.  The plaintiff
cannot be careless and recover; within the rule stated, the plain-
tiff must have exercised ordinary care, and of this the jury are
to judge, she having the burden of proof.  But it is not true as
a proposition of law, that the plaintiff, although she had previ-
ous knowledge of the defect or danger, was bound to have her
attention directed, at the moment of danger, to the same.  That
the plaintiff knew of the existence of a peril is a fact for the
jury to weigh, in determining whether she did or did not exer-
cise due care; but it is not conclusive as a matter of law.  In con-
sidering the question of due care, the jury will give such weight
as they think proper to the facts, as to the articles which the
plaintiff's hands were employed in carrying.  If the negligence
of a third party contributed to the accident, the plaintiff cannot
recover.  If, for instance, she was thrown off the bank by the
cart backing upon her, by the negligence of the driver, or was
put in fear by his negligence in backing the cart towards her, so
that she stepped off and over the bank in consequence thereof,
she cannot recover.  Negligence of the teamster in this connec-
tion is an act or omission which common prudence should have
foreseen and guarded against."

As to the 16th request for instruction, the judge said : " If a
suitable railing would not have prevented the injury which the
plaintiff received, or would have caused her an equal injury,
then the plaintiff cannot recover ; it is essential she should show
that she had suffered from the want of a railing or barrier."

The jury found for the plaintiff; and the defendant alleged
exceptions.

*J. L. Eldridge*, for the defendant.

*J. M. Day*, for the plaintiff.

COLT, J.  Under the instructions given in this case, the jury
must have found that there was a defect in the highway, which
was the sole and immediate cause of the plaintiff's injury ; that

this defect was occasioned by the want of a suitable railing at the place where the accident happened; that the plaintiff, although she knew of the defect, and although she attempted to pass while the street at that point was obstructed in part by a horse and cart standing across it, was nevertheless in the exercise of due care; and finally, that neither the negligence nor the wilful act of the driver of the cart, or the fear caused thereby, contributed to the injury.

This establishes the liability of the defendant, and gives the plaintiff a right to recover, unless the evidence fails to justify these findings, or unless the judge improperly refused to give the specific instructions requested upon this part of the case.

We think there was evidence to support each of these several propositions. It is not a question of its weight, or whether the verdict ought to be set aside on a motion for a new trial. The only question here is whether there is any evidence in the plaintiff's favor proper to submit to the jury. *Forsyth* v. *Hooper*, 11 Allen, 419. The only point made at the argument was as to its sufficiency to prove that the plaintiff was in the exercise of due care. But the plaintiff herself testified that she was watching the cart and thinking how she was going to get by; that there was room enough to pass safely between the cart and the embankment at the side of the road where the railing ought to have been placed; and that it occurred to her she must be careful or she would fall. All this was some evidence that she was mindful of the danger to which she was exposed, and careful to avoid it. The jury may have believed the plaintiff, and disregarded evidence in the case at variance with her testimony. They have declared by their verdict that the care which was actually exercised was such care as a person of the plaintiff's age and sex should be reasonably required to exercise under all the circumstances of the case. And we cannot say, as matter of law on exceptions, that the evidence does not justify the verdict on this point.

Most of the specific instructions asked for on this point were sufficiently covered by the instructions given. The third, fourth and fifth had special reference to the effect of the plaintiff's knowledge of the defect, and of the danger in attempting to pass, upon the question of her due care. As applied to the facts dis-

closed, they were properly refused. The effect of the plaintiff's previous knowledge is a practical question for the jury in most cases, and depends upon the character of the defect. If the obstruction or defect is such that it is absolutely impossible to pass over the road in safety; as where a bridge has been carried away, or a culvert is washed out, or a fallen tree prevents all passage, then it may be safely laid down as a legal proposition that one who knows it and attempts to go on would not be in the exercise of ordinary care; while knowledge of a defect less serious, making the way difficult and dangerous but not impassable, like want of a railing or an imperfect road bed, would only impose on the traveller such additional care as the increased exposure would demand. Whether such care was exercised is ordinarily for the jury to find. It is not true that the traveller takes the risk in all cases where, believing that he can pass safely, he attempts to pass a known defect; on the contrary, he may properly do so, if consistent with reasonable care. The instructions here asked would tend to mislead the jury, and those given instead were apt and sufficient. The jury were told that the plaintiff must exercise ordinary prudence in determining whether she would attempt to pass while the street was obstructed by the horse and cart; and in selecting the place where to pass; and while passing; and at the time of the accident. The judge could not properly be called on to point out the specific acts required of the plaintiff. Nor could he say, as matter of law, that the plaintiff was bound to have her attention directed, at the moment of danger, to the alleged defect. *French* v. *Taunton Branch Railroad,* 116 Mass. 537. *Patrick* v. *Pote*, 117 Mass. 297. *Gerald* v. *Boston*, 108 Mass. 580. *Mahoney* v. *Metropolitan Railroad*, 104 Mass. 73. *Lyman* v. *Amherst*, 107 Mass. 339. *Barton* v. *Springfield*, 110 Mass. 131. *Weare* v. *Fitchburg*, 110 Mass. 334.

The measure of prudence required of the plaintiff was stated with sufficient accuracy. *Elkins* v. *Boston & Albany Railroad*, 115 Mass. 190. *Dowd* v. *Chicopee*, 116 Mass. 93.

The jury were told that if a suitable railing would not have prevented the injury, or would have caused an equal injury, the plaintiff could not recover; and this covered sufficiently the sixteenth request. The eighteenth request was not warranted by the state of the evidence.

Without going over each of the numerous requests, it is suffi-
cient to say that we see no error in the refusal to give them, or
in the instructions which were given.

*Exceptions overruled.*