## LOEWER v. THE CITY OF SEDALIA, *Appellant.*

1. **Municipal Corporations**: DUTY TO KEEP STREETS SAFE. The law imposes on municipal corporations the duty of keeping their streets in a reasonably safe condition for the convenience of travel. Failing in this, they become liable for all resulting injuries.

2. **Negligence**: KNOWLEDGE OF DANGER. The mere fact that a person attempting to cross a bridge on a dark night knows that is not provided with a railing, will not prevent him from recovering damages for injuries sustained in falling from the bridge if he falls without fault or negligence on his own part.

3. ——: DANGER SIGNALS. Whether the want of a warning light at a bridge at night, tends to establish negligence, depends upon the character of the danger, as arising from the situation, condition and use of the bridge, and is properly a question of fact for the jury.

4. ——: QUESTION OF FACT. Where the question was whether plaintiff was guilty of contributory negligence in using a dangerous sidewalk when he might have walked in the roadway; *Held*, that this was for the jury, and not the court, to determine.

5. **Evidence.** Certain evidence in this case objected to as opinions of the witnesses; *Held*, to be statements of fact and not opinions, and, therefore, properly receivable.

6. **"And."** In an action for negligence defendant pleaded contributory negligence growing out of plaintiff's intoxication. At the plaintiff's instance, the court instructed that the burden of proof rested on defendant to show that plaintiff's injury resulted from his intoxication *and* negligence. *Held*, that this meant negligence superinduced by intoxication, and the instruction was, therefore, not misleading.

*Appeal from Lafayette Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

*B. G. Wilkerson* and *Jno. Montgomery, Jr.*, for appellant.

*Jno. F. Philips* for respondent.

MARTIN, C.—This is an action to recover damages received by plaintiff by a fall from a bridge across Fourth

street in the city of Sedalia. It was originally instituted in Pettis county on the 19th day of August, 1875, and was by change of venue removed to Lafayette county, where it was tried by a jury at the April term, 1879.

After the usual averments for negligence against a municipal corporation, the petition goes on to say, " that one of the streets in said city was, on the 28th day of April, 1875, designated and known as Fourth street; that at a point in said street known as ' Woods' Addition,' then and there was and is a large and deep ravine, over which the said city had constructed a bridge and extended partially a sidewalk on and along the northern side thereof, but unmindful of its duty in the premises, carelessly and negligently left the side of the sidewalk over said ravine wholly unprotected by railing or other guard to prevent or protect passengers from stepping or falling from said pass-way into the ravine, a depth of twelve or fifteen feet; that on the night of the 28th day of April, 1875, he was passing along said street on said night going to his home in said city in said ' Woods' Addition,' when, through the fault and negligence of said defendant, in failing to have such railing or other guard along said sidewalk over said bridge, or to have any light thereat, to enable persons to see their way thereat, although the said city had notice of the condition of said sidewalk, the plaintiff stepped and fell from said bridge into said ravine with great violence, by reason of which said fact he was greatly injured and bruised, and his life endangered; that his right leg near the hip-joint was broken, and the side of his said leg bruised and mashed from the knee to the hip, and his right arm was broken and dislocated near the wrist, his head seriously cut and bruised in divers places; and that in consequence of the injuries so received he was confined to his bed for two months, suffering great physical and mental pain, and was rendered an invalid for life, being unable to walk without crutches."

The answer consists of a special denial of the material

allegations in the petition, with admissions in a qualified form of many of the facts therein stated. It is denied that plaintiff stepped or fell from the bridge through the fault or negligence of defendant in failing to have railings or guards on the bridge, or a light to enable persons to see their way. The answer concludes with a well defined plea of contributory negligence on the part of plaintiff, averring "that he was and for a long time previous had been entirely familiar with the exact condition and situation of said street, bridge and sidewalk, and with the situation and condition of the ground and streets adjacent to and in the vicinity thereof; that said bridge was seventy or more feet wide, and there was not the least danger of persons exercising ordinary care falling therefrom ; and defendant avers that the alleged stepping off or falling off from said bridge or pass-way, and the injuries ensuing in consequence thereof, were caused by and were the direct result of the plaintiff's own negligence, intoxication and want of care at the time and immediately previous to the time he fell from said bridge, the plaintiff being then and there intoxicated to such a degree that he failed and neglected to exercise ordinary care."

The reply denied all new matter pleaded in the answer. The trial resulted in a verdict for the plaintiff on the 14th day of April, 1879, in the sum of $3,500.

Motions for new trial and in arrest of judgment were filed and overruled, and the case comes here upon appeal by defendant. These motions are full and broad enough to cover all the points raised in the argument, and need not be introduced into this statement. The evidence in the case accorded with the pleadings. That submitted by plaintiff, was directed to establish negligence on the part of defendant in making and maintaining the bridge without railings or guards or lights to protect persons from falling off it; the defendant's evidence was directed to establish a knowledge of the condition of the bridge and a want of ordinary care in crossing it, resulting from in-

28—77

toxication at the time. As the defendant, at the close of plaintiff's case, interposed a demurrer to the evidence, which was overruled, I will state in substance those portions of it supposed to bear on the issues of negligence by defendant, and contributory negligence by plaintiff.

The plaintiff testified that he was a tailor having a shop on Main street in Landes' jewelry store, and that he resided in Woods' Addition, which is in the western part of Sedalia; that there was a bridge over a ravine on Fourth street between the place of his residence and his shop; that in passing home in dry weather he would go through the commons north of the bridge where there was no crossing, but that in bad weather he would pass over the bridge; that after a rain there would be water enough in the ravine to sweep things away; that the ravine was made deeper by building up the street so as to make the bridge there, and that the bridge in question was the only one across it; that it was from twelve to fourteen feet wide, eight or ten feet high, and had no railing or other protection on either end of it; that there was no light or street lamp at the bridge; that there was a sidewalk on the north side of Fourth street and none on the south side; that he was familiar with the bridge and sidewalks, having been in the habit of frequently passing them by day and by night; that he only used the bridge and sidewalk when it was muddy; that on the night of the injury it was very dark; that he went upon the bridge from the sidewalk from the east side, and fell between twelve and one o'clock from the north end of it in trying to walk across it; that he thinks there were rocks where he fell; that when he came to himself he was in the ravine in the water with an arm and leg broken, and head bruised; that a heavy Scotch cap on his head was cut and probably saved him from being killed. The injuries and damages are fully detailed by the witness.

In respect to his condition on the night of the accident and how it came about, he testified: That he had spent

the afternoon and part of the night till nine o'clock at his shop; that he then went to Beck's boarding house and saloon to see a person by the name of Slifer, with whom he was arranging for a partnership; that he was not there and plaintiff drank nothing there, that he then went to Berger's bar where he met Slifer and stayed till a little after eleven o'clock; that he possibly took a " soda " there and then left after fixing up his business with Slifer; that he then went to Landes' jewelry store to wake up the boy who slept there and get a lantern, but couldn't get in; that he then went to Herman Schmit's wine hall, where he stayed waiting for the storm to abate, till between one and two o'clock; that the storm began at eleven, and the rain began to fall about twelve o'clock; that Ivers, an express messenger, was at the hall and went part of the way home with plaintiff; that Schmit and other gentlemen were at the hall; that he did not think he drank more than two or three times with Ivers; did not think he drank the fourth time with him; that it was beer he drank; that he and Ivers started off from the hall together; that they went down Main to Kentucky street and found it flooded; then came back to Osage, went south on Osage to the market house, and then west on Second street to Kentucky street, and then south on Kentucky street by Major Beck's to Fourth street; that Ivers left him after passing up Kentucky street for his own residence, a little north of Vogler's on Moniteau avenue; that plaintiff asked Ivers for a lantern, and was told that he had none; that Ivers told him to go to Vogler's for a lantern; that he went to Vogler's and could get none; that Vogler told him that if it was not too awful stormy to take the middle of the street to the bridge, then take the sidewalk and watch the lightning; that it was very dark and began lightning and raining again; that on seeing a light at Abbott's between Vogler's and the bridge, he called, wanting a lantern; that no one came out, and he went on; that he got on the bridge from the sidewalk on the east side and waited for another

flash of lightning; that a flash came; that he saw the side-walk distinctly on the west side and started for it, as he supposed; that he aimed to cross the bridge; that his right foot gave away, tried to throw his weight on his left foot, but it was too late, and he went down; that the wind was blowing hard; that it was raining and he had his umbrella up; that it took all his strength to keep up his umbrella; that he fell from the north end of the bridge, and received the injuries he sues for.

Dr. Evans, who attended him, testified to the serious and permanent character of the injuries. He also testified that he reached him between two and three o'clock; that he smelt beer on his breath and thought he had been drink-ing, but did not regard him as drunk; that if he had been very drunk an hour before, he would not have been as sober as he was when found; that if a man was right drunk and would fall into a branch like that it might arouse him, but the shock would have a serious effect on him; that in the condition plaintiff was found by witness he could not have been very drunk an hour before.

The testimony of Hadlond, Abbott and Sloane was submitted in behalf of plaintiff corroborating him in re-spect to the character and condition of the ravine, bridge, sidewalk and the condition of plaintiff when found after the fall. Abbott testified that he smelt beer on plaintiff's breath; did not smell any other liquor; satisfied that it was beer. This closed plaintiff's evidence, after which the defendant demurred to the evidence, which was overruled. After stating the balance of the evidence in the case, I will recur to this action of the court in overruling the demurrer.

On the part of defendant evidence was introduced re-lating to the character and surroundings of the bridge, which need not be stated here. Considerable evidence was also submitted on the part of defendant tending to show that the plaintiff had been drunk the previous afternoon, and as late as seven and eleven o'clock that evening. Evi-

dence was also given tending to prove that he was drunk when taken from the ravine; that his breath smelled very strong of liquor or beer, and that when found in this ravine he spoke of having been pushed off the bridge "by bad men." The evidence tending to prove him strongly under the influence of liquor at the time of the injury, is very convincing, when considered by itself.

On the part of the plaintiff the evidence in rebuttal of this testimony relating to his condition, is equally convincing. The plaintiff introduced the testimony of Schmit and Stewart, who saw the plaintiff at the wine hall, and saw him leave sober, after having borrowed an umbrella; also the testimony of Ivers, who says that the plaintiff drank not more than two glasses of beer at the wine hall, and was sober when he left him on Kentucky street on his way home; also the testimony of Vogler, at whose house the plaintiff stopped for a lantern. This was only a few minutes before the accident. Vogler corroborated the plaintiff about the storm and the rain and the call for the lantern, which could not be furnished, and the suggestion to proceed by the uncertain electric light which was furnished by the storm. He testified that plaintiff was sober, that he saw no indication of drunkenness, and that he never saw plaintiff when he was not capable of taking care of himself.

On this evidence, however confusing or contradictory it may be, the case went to the jury, as the only tribunal provided by our laws to decide such issues.

The following instructions were given at the instance of the plaintiff.

1. It is admitted, by the pleadings, that at the time of the injury complained of, the bridge in question extended across one of defendant's streets, and that said bridge was built by defendant. It then became and was the duty of defendant to keep said bridge in a reasonably safe condition for the use and convenience of persons passing over the same, as well in the night-time as in the day-

time; and if a part of said bridge was constructed for and used as a sidewalk for passengers, it was the duty of defendant to have erected a railing or other protection on said bridge, where the same was so used as a sidewalk, if the jury believe from the evidence that without such railing or protection the bridge was unsafe and inconvenient for persons passing over it in the night, exercising ordinary care; and in determining the question as to the safety of said bridge and sidewalk, and the necessity for a railing or other protection to said bridge, the jury will take into consideration the width and height of said bridge, and the danger incident to falling therefrom.

3. Although the plaintiff may have been familiar with the locality and condition of the bridge in question, such fact did not impose upon him the duty of exercising extraordinary care in passing over said bridge. He was only required to exercise ordinary care, and the jury will determine from the facts and circumstances in evidence, including the plaintiff's knowledge of the bridge, the facilities for reaching plaintiff's house by any other convenient route, and the darkness of the night, whether he exercised ordinary care; and, if the jury believe that a railing or other guard was necessary for safety, as instructed by the court, and that plaintiff in the exercise of such care received the injury complained of, which he would not have received had defendant placed a railing or other proper protection on said bridge, then the jury will find the issues for plaintiff.

4. Although the jury may believe from the evidence that plaintiff, on the night of and previous to the injury complained of, had been drinking intoxicating drinks, yet if they further believe from the evidence that the same had not so affected his mind and power of locomotion as to prevent him from exercising ordinary care in going to his house and passing over the bridge in question, and that he exercised such care, and would not have received the injury if defendant had placed a railing or other proper

protection on said bridge; if the jury further believe from the evidence that such railing or other protection was necessary for the reasonable safety of persons passing over the bridge, the jury will still find the issues for plaintiff.

5. The burden of proof rests upon defendant to establish the defense that plaintiff's injury resulted from his intoxication and negligence, and unless such defense is established by a preponderance of evidence, the jury will find for plaintiff as to such issue.

6. If the jury find the issues for plaintiff, in determining the measure of damages, they may take into consideration the mental and physical pain and suffering endured by plaintiff since said injury, in consequence thereof; the character and extent of said injury and its continuance, if permanent, together with his loss of time and service and his inability, if any, resulting from said injury to earn a livelihood for himself and family, and his necessary expenses for medicines and medical attention; and, may find for him such sum as in the judgment of the jury, under the evidence, will be a round compensation for the injury, not to exceed the sum of $5,000.

8. The jury will disregard and exclude from their consideration, in making up their verdict, the expression of opinion by any witness as to the safety of the bridge in question.

The court gave the following instructions at the instance of defendant:

1. That the city of Sedalia is not an insurer against accidents upon its streets and sidewalks, nor is every defect therein, though it may cause an injury, actionable. It is sufficient if the streets, which include sidewalks and bridges thereon, are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; and whether the bridge was reasonably safe for a foot passenger by night, is a question to be determined by this jury.

2. It devolves upon the plaintiff to prove to the satisfaction of the jury that, at the time plaintiff received his

alleged injuries, the bridge in question was not reasonably safe for foot passengers by reason of the want of a railing or other guard to keep such foot passengers from walking off the north end of said bridge. In determining whether the want of such railing or other guard rendered said bridge unsafe as aforesaid, the rule for the government of the jury is: Was there at the time plaintiff was injured such a risk of a foot passenger, exercising ordinary care and prudence, walking off the north end of said bridge, that a railing or other guard was necessary to make said bridge safe in that respect, and, unless the jury find there was such a risk, they must find for defendant.

5. Any defect, if any, in said bridge, or in the street or sidewalks leading thereto and therefrom, except the want of a railing or other guard to keep foot passengers from stepping or walking off the north end of said bridge, must not be considered by the jury in determining whether said bridge was reasonably safe.

7. Although the jury should find that defendant was negligent in not having a railing or other guard at said bridge, and plaintiff would not have been injured but for said negligence, yet if the jury further find that plaintiff might have avoided his injuries therefrom, by using ordinary care and prudence, he cannot recover.

8. If the jury find that plaintiff was familiar with said bridge and the street and sidewalks leading thereto and therefrom, they will take this fact into consideration in determining whether plaintiff exercised ordinary care and prudence to avoid falling from said bridge.

10. Ordinary care and prudence, as used in these instructions, is such care and prudence as a sober and reasonably prudent man would have exercised under the same or similar circumstances, and the words imply the use of such watchfulness and precaution as were fairly proportioned to the danger to be avoided.

11. It was the duty of the plaintiff to use every care and precaution to avoid falling from said bridge that a

sober man of ordinary prudence would have used under the circumstances; and if he failed to use such care and precaution, and such failure contributed directly to causing his injuries, he cannot recover.

12. It is for the jury to determine, from all the facts and circumstances in evidence, whether the plaintiff was intoxicated at the time he was injured. His being intoxicated would in nowise lessen his duty to have used ordinary care and prudence to have avoided his injuries. The law requires the same care and prudence from an intoxicated man that it does from a sober man, and while the fact of intoxication alone, if proved by the evidence, will not establish want of ordinary care and prudence, yet it is a circumstance which the jury may consider in determining whether the plaintiff did exercise ordinary care and prudence.

The following instructions asked by defendant, were refused :

3. Although the jury should find that there was such a risk as that mentioned in the preceding instructions, to a person not familiar with said bridge, yet if the jury find that there was not such a risk to a person familiar with said bridge, and that plaintiff was familiar therewith, he cannot recover.

4. The want of a light at said bridge to enable foot passengers to see their way thereat, was not negligence on the part of the city.

6. If the jury believe from all the evidence in this case, that at the time plaintiff was injured, a person exercising ordinary care and prudence, and familiar with said bridge, and the streets and sidewalks leading thereto and therefrom, might have crossed said bridge in safety, and that plaintiff was familiar therewith, he cannot recover.

9. If the jury believe that plaintiff was familiar with the said bridge, and the street and the sidewalk leading thereto and therefrom, and that said bridge was reasonably safe, except in the matter of not having railing or

other guard thereon; and that such street in front of the sidewalk was in a condition that it could have been used safely and conveniently, and was easily accessible from the sidewalk, and that plaintiff by leaving the sidewalk and taking the street might have crossed said bridge in safety by using ordinary care, he cannot recover.

13. The jury will, in considering of their verdict, exclude from their consideration that part of deposition of the witness, Gabriel Vogler, which is as follows. "Because, in the first place, there was a bridge I would have been afraid to travel over."

The court, of its own motion, gave the following instructions:

"The court instructs the jury that it was the duty of defendant, in erecting and constructing the bridge in question, over and across a public street in the city, to so erect and construct said bridge as to make the same reasonably safe for travel and use for all persons passing over the same on foot or otherwise, as well in the night as in the daytime; and, if the jury believe from the evidence that railing or bannistering or other guard was necessary on the sides of the bridge to protect foot passengers by day or by night from the danger of a fall from the bridge, then it was the duty of the defendant to cause to be provided and constructed on the sides of the bridge such railing or bannistering or other sufficient guard to give protection against such danger of falls from the bridge, and the court instructs the jury, that the question whether such railing, bannistering or other guard was necessary, is not a question for the court to decide, but a question for the sole finding and determination of the jury; and unless the jury find from the evidence that such railing, bannistering or guard was so necessary for the reasonable safety of persons passing over the bridge, and that defendant failed to provide the same, plaintiff is not entitled to recover in this action. But if the jury find from the evidence that such railing, bannistering or guard on the sides of the bridge were nec-

essary for the reasonable safety of passengers by night or by day, and that defendant failed and neglected to provide the same; and further find that plaintiff, on the night of the 28th of April, 1875, was passing along a public street of said city, leading to and over said bridge, observing and using ordinary and reasonable care to pass and go over said bridge safely, when, through the fault and negligence of defendant in failing to have such railing or other guard along the sides of said bridge, he stepped or fell from said bridge into the ravine below and was thus greatly hurt and injured, in such a case the jury will find for plaintiff, and assess his damages in such sum as the jury may believe from the evidence he sustained by reason of such injury, not to exceed $5,000."

On the evidence and instructions the case was submitted to the jury, who returned a verdict for the plaintiff in the sum of $3,500.

To sustain the demurrer to the evidence the court would have been compelled to hold, as a matter of law, that there was no evidence contained in the plaintiff's testimony tending to show negligence on the part of defendant, in constructing and maintaining this crossing without guards or lights to prevent passengers from falling off it, or that the evidence elicited to establish the contributory negligence of the plaintiff, did not admit of any other inference than that the plaintiff was negligent, and that his negligence was the proximate cause of the injury complained of. I do not think the court would have been justified in doing this.

1. MUNICIPAL CORPORATIONS: duty to keep streets safe.

The law of negligence, as applied to municipal corporations, is well settled, and there seems to be no substantial difference about it between the counsel in the case. The city of Sedalia had full power over its streets and sidewalks, and the law imposed on it the duty of keeping them in a reasonably safe condition for the convenience of travel. Failing in this duty it became liable for all in-

juries resulting from this negligence. *Bassett v. City of St.-Joseph*, 53 Mo. 290; *Blake v. City of St. Louis*, 40 Mo. 569; *Staples v. Town of Canton*, 69 Mo. 592; *Hull v. Kansas City*, 54 Mo. 598; *Russell v. Columbia*, 74 Mo. 480. In this case the city constructed a bridge crossing a ravine from eight to fifteen feet below it, for the use of vehicles and passengers, and left it without guards or railings or warning lights of any kind to protect or help passengers in crossing it in safety either by day or night. I think negligence is the natural and necessary inference from these facts, among all men in all countries in which bridges and crossings are known and used.

In respect to the negligence and want of care in plaintiff, the simple fact that he knew there were no rail-
2. NEGLIGENCE: ings or guards on the bridge, would not pre-
knowledge of
danger.   clude him from recovery if he fell from it, without any fault or negligence on his part. *Buesching v. St. Louis Gas Co.*, 73 Mo. 220; *Smith v. St. Joseph*, 45 Mo. 449. The negligence imputed to him is alleged in the answer to have been the result of intoxication. To make him the proximate cause of this misfortune, we would have to hold that the imbibing of three glasses of beer and one " soda," between nine and twelve o'clock in the evening, had placed him in such a condition as to render him incapable of exercising ordinary care and prudence in getting to his home. This, we would not be justified in doing, under the evidence relating to his actual condition just before and immediately after the accident. Hence, the question of negligence as proceeding from both parties, was properly kept for disposition by the jury.

I will now briefly examine the instructions in the light of the evidence, for the purpose of determining whether the case was submitted with proper and correct declarations of law from the court. In considering these instructions it is not necessary to go beyond the objections now urged by the counsel for appellant, in their able and exhaustive brief and argument. The first two points to the

effect that the defendant's demurrer to the evidence should have been sustained, and that the finding of the jury is clearly the result of partiality or prejudice, have been practically disposed of. If these objections could not be sustained when the plaintiff closed his case, they certainly were not strengthened by the subsequent evidence *pro* and *con* upon the question of negligence and intoxication. Unless the jury was misled by instructions, their verdict will have to stand, as it is supported by too much evidence to admit of the conclusion that they were actuated by prejudice and passion, and not governed by evidence before them.

It is next urged that the fourth instruction asked by the defendant was improperly refused, and that the jury

3. ———: danger signals. ought to have been instructed that the absence of a light at the bridge did not constitute negligence. Whether the absence of a warning light tends to establish negligence depends upon the character of the danger, as arising from the situation, condition and use of the bridge at the time of the accident, and is properly a question of fact for the jury. *Hyatt v. Village of Rondout*, 44 Barb. 386 ; *Comm. v. Cent. Bridge Co.*, 12 Cush. 242. It would not have been proper for the court, in the presence of all the contradictory evidence in this case, to declare that as a matter of law there was no negligence in the absence of a warning light. It was a fact which bore upon the care and caution exercised by the plaintiff in crossing; (*Randall v. E. R. Co.*, 106 Mass. 297,) and the instruction, which entirely eliminated the fact from all surrounding facts, might have tended to mislead the jury as to its true import in the case. 8 Am. Rep. 327.

The third instruction asked by the defendant was properly refused. It in substance directed the jury to find against the plaintiff, if he was familiar with the bridge. This left out of view the question of negligence, and rendered the knowledge on the part of plaintiff of the condition of the bridge at the time, an absolute indemnity

against all accidents, however defective and dangerous it might be.

The sixth instruction, which in substance directed a finding for the defendant if a person exercising ordinary care and prudence might have crossed the bridge in safety at the time of the injury, was properly refused. The law of this instruction is covered by the seventh, eighth, tenth and eleventh instructions given at defendant's request, where it will be found more fairly presented.

There was no error in refusing the ninth instruction asked by defendant. It in substance directed a verdict for 4. ——: question defendant, if the plaintiff might have avoided of fact. the accident by crossing over the space commonly used by vehicles. The way in which an accident happens usually shows, after it is over, that it might have been avoided if the injured party had been possessed with the forethought to escape it by taking some other route. But ordinary prudence is not inspired with such forethought, and the law does not impute negligence for a failure to foresee and escape such dangers. It is for the jury to say whether, under all the circumstances, he was guilty of negligence in not traveling in the space commonly used by vehicles. *Barton v. Springfield*, 110 Mass. 131; *Snow v. Provincetown*, 120 Mass. 580.

There was no error in refusing the thirteenth instruction asked by defendant, to the effect that Vogler's state-5. EVIDENCE. ment as a witness should be excluded, wherein he says that he was afraid to travel over the bridge. This was not an opinion, but a reason assigned by him on cross-examination for advising the plaintiff to take the middle of the street. He was asked for his reason and he gave this in answer to the inquiry. The statements of Hadlond that he usually carried a lantern when crossing the bridge, and that the wind blew strong up the ravine, are not opinions, and are properly admitted.

The fifth instruction, at the instance of plaintiff, has been criticised as imposing on defendant the burden of

·establishing the defense of contributory negligence, by requiring proof of both intoxication and negligence to make it out.   It may be remarked that the only negligence complained of in the answer is alleged to proceed from intoxication, "the p'aintiff being then and there intoxicated to such a degree that he failed and neglected to exercise ordinary care."    The ‚evidence submitted by defendant bearing on the negligence of plaintiff related to intoxication as the immediate cause.   The instruction obviously was intended to require proof of such intoxication as culminated in negligence.   Under the pleadings and the evidence, which related only to the negligence superinduced by intoxication, I think this instruction could not have been misleading.

The instruction given by the court of its own motion, was eminently fair and comprehensive.   No point is made against it by the counsel for appellant in their brief.   The case, upon the whole, seems to have been placed fairly before the jury.   The result cannot be disturbed by the appellate court, without taking upon itself the functions of a jury.   It is more than probable that another trial would terminate in the same result.   Accordingly, the judgment is affirmed.   WINSLOW, C., concurs ; PHILIPS, C., not sitting, having been of counsel when the case was submitted to the court.