EMMA BUESCHING, Respondent, *v.* ST. LOUIS GAS-LIGHT COMPANY, Appellant.

May 21, 1878.

1. In an action for damages, where plaintiff's evidence shows that the deceased was found dead in a cellar-way of defendant, such as are common in the

streets of large cities, the same opening upon a street with which deceased was familiar, in full view and within half a block of the business-place which he had occupied for years, there arises no presumption of negligence on defendant's part causing the injury, and it is error to refuse an instruction in the nature of a demurrer to the evidence. The facts raise a presumption of negligence on the part of the deceased, it appearing that the cellar-way was not peculiarly dangerous and that the locality was well lighted.

2. If there is any evidence from which the jury may infer that the deceased was not quite sober when the accident occurred, it is error to instruct the jury that "ordinary care is that care which might reasonably be expected of one in the situation of deceased at the time of the accident."

3. Where there are no "aggravating or mitigating circumstances" in the case, it is unnecessary to use the words in instructing the jury as to the measure of damages.

4. Those walking in the city are bound to take notice of the existence of such constructions as the necessities of commerce and the convenient occupation of residences render common; and if injured by them, must blame themselves.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

CLINE, JAMISON & DAY, for appellant: Ordinary care implies the use of such watchfulness and preventions as are fairly proportionate to the danger to be avoided, judged by the standard of common prudence and experience.—*Guppen* v. *Railroad Co.*, 4 N. Y. 34; *Mackey* v. *Railroad Co.*, 27 Barb. 542; *Railroad Co.* v. *Goddard*, 25 Ind. 135; *Railroad Co.* v. *Terry*, 8 Ohio St. 570; *Railroad Co.* v. *McTigh*, 46 Pa. St. 316; *McKay* v. *Railroad Co.*, 35 N. Y. 75. The instruction should have told the jury that in assessing the damages they should have regard to the mitigating or aggravating circumstances of the case. — Wag. Stats. 520, sect. 4; *Owen* v. *Brockschmidt*, 54 Mo. 285. The facts in the case raise the presumption of the negligence of the deceased. — *Murphy* v. *Dean*, 101 Mass. 466; *Trow* v. *Railroad Co.*, 24 Vt. 287; *Birge* v. *Gardiner*, 19 Conn. 507; *Warren* v. *Railroad Co.*, 8 Allen, 227; *Allyn* v. *Railroad Co.*, 105 Mass. 403; *Bard* v. *Morford*, 29 Iowa, 531; *Thompson* v. *Railroad, Co.*, 51 Mo. 190.

SLAYBACK & HAEUSSLER, for respondent: The defendant is not allowed to impute want of vigilance to one injured by its act, if that very want of vigilance was only culpable because of some omission of duty on the part of defendant; and the whole question must go to the jury. "Whether the facts constituted such negligence as to render the company responsible was exclusively for the jury to determine." — *Kennayde* v. *Railroad Co.*, 45 Mo. 255; *Brown* v. *Railroad Co.*, 50 Mo. 466; *Kennedy* v. *Railroad Co.*, 36 Mo. 351; *Johnson* v. *Bruner*, 61 Pa. St. 58; *Lehigh Valley R. Co.* v. *Hall*, 61 Pa. St. 361. The jury were justified in inferring negligence from the circumstances proved. — *Fitch* v. *Railroad Co.*, 45 Mo. 322; *Feital* v. *Railroad Co.*, 109 Mass. 398; *Stokes* v. *Saltonstall*, 13 Pet. 181; *Railroad Co.* v. *Pollard*, 22 Wall. 341. "Ordinary care means that degree of care which may reasonably be expected from a person in the plaintiff's situation." — *Wyatt* v. *Railroad Co.*, 55 Mo. 485; 62 Mo. 408; *Huelsenkamp* v. *Railroad Co.*, 37 Mo. 551; *McKeon* v. *Railroad Co.*, 42 Mo. 83; *Railroad Co.* v. *Kellogg*, 4 Otto, 469.

BAKEWELL, J., delivered the opinion of the court.

This is an action by the widow of Frederick Buesching for damages. The allegations of the amended petition are that the St. Louis Gas-Light Company, on January 22, 1876, owned a building on the north-west corner of Pine Street and the alley between Second and Third Streets, in St. Louis; that the cellar-way to the building was carelessly and negligently constructed, and left open, and left without a proper gate, by reason of which plaintiff's husband, at the date aforesaid, fell into said cellar-way and lost his life. The answer of the Gas-Light Company denies all the material allegations of the petition, and alleges that deceased came to his death by his own negligence. There is no answer by defendant Barnes. It would seem that the action must have been dismissed as to him before the amended

petition was filed. But the record says nothing as to that. There is no replication to the answer.

The testimony shows that the Gas-Light Company had been for about twenty-five years the owner of the building in question, and Barnes was the tenant in possession at the time of the accident, under a lease from the Gas-Light Company. The building is on the north side of Pine Street, and runs back along the west line of the alley that extends through the block between Second and Third Streets. The street is in the business part of the city, is much frequented in the daytime, and almost deserted after business hours. The street is about forty feet wide, with sidewalks about five feet wide. For the distance of the half-block between the alley and Third Street the houses on the north side of the street are set back two and a half feet further from the line of the street than are the houses on the rest of the street for four blocks, from Fourth Street to the Levee. From the wall of the Gas Company building to the curbstone the distance is nine feet. Immediately in front of the building is a descent into the cellar, two feet five inches wide and three feet nine inches deep, with five steps. Parallel with the street an iron railing extends along the opening. This railing stops at the top step, about two feet from the east end of the opening; so that one going into the cellar can step on to the second step, from the sidewalk on the south side, or front, of the building. The entire length of the opening is eight feet, six feet of which are protected by the railing. The alley is fifteen feet wide; and the top step to the cellar, which is eight inches wide, extends to the alley; so that the descent into the cellar begins just eight inches west of the east wall of the house. There are several openings for cellar-steps of the same character in the block.

Buesching was a saloon-keeper, and up to a period about eighteen months before his death he had kept an eating-house and saloon for six years at the corner of Second and Pine Streets, half a block from this cellar-way. At the time of

the occurrence he was keeping a saloon on Chestnut Street, between Main and Second Streets, two blocks from the place of the accident, and lived there with his family over the saloon. He was an industrious man, attentive to his business, but somewhat given to drink. All the witnesses for plaintiff who spoke as to his habits had seen him, on some occasions, under the influence of liquor, but no one had ever seen him so drunk that he did not know what he was about, and could not walk and talk. He was last seen alive by the barber at a shop on Olive Street, near Second, who shaved him. The barber and deceased were intimate acquaintances. The night of January 22d was cold, blustering, and rainy. At nine o'clock Buesching came into the barber-shop and was shaved. He waited until the shop was shut up, and asked the barber to drink with him, which the barber declined to do. The barber testified that the deceased might have been drinking, but did not show any effects of it, and that he never had seen deceased stagger from drink, or so affected by it as not to be able to take care of himself. They separated at a quarter to ten, at the corner of Olive and Second Streets, and the barber, as he passed up Olive Street, looked back and saw Buesching crossing Second Street west, at Pine Street. He was not seen alive again. It was thawing and raining at the time; the streets were muddy; and Buesching was in low slippers, and had neither overcoat nor umbrella. This was on Saturday night. The next morning at seven o'clock Buesching was found at the bottom of the cellar-entrance in front of the gas building, lying on his back, with his feet up the steps and his head against the basement door. His neck was broken, and he was dead, of course. The door had marks as if his head had struck it and slipped down. His face was slightly bruised, as if from the fall. His person was not rifled. His watch and $45 were in his pockets. His pantaloons were unbuttoned for a short distance in front. Persons were in the habit of making water in the

alley, and one coming from the alley, and making a short turn to the right, might incautiously step into the stairway leading to the cellar of the gas building. The gas was burning all night in the lamp at the corner of the alley, on the opposite side of the street, thirty-four feet from the place where Buesching fell.

On the part of the defendant, persons who had been officers of the Gas-Light Company for many years, one of them for more than twenty years, and who said that it would be their business to know if such a thing ever occurred, testified that they had never heard of any one falling into the entrance to the cellar of the gas building, or being injured there. And evidence was introduced that the cellar-opening was of a kind usual on the streets of St. Louis.

At the close of plaintiff's case, defendant offered an instruction in the nature of a demurrer to the evidence, which was refused.

We think that this instruction should have been given. It is clear from the evidence that one using that ordinary care which a prudent and sober man uses in walking along the streets at night would not have fallen into this cellar-way. There was no eye-witness of the accident; but the mere fact that a citizen fell headlong into such a passage-way, on a street with which he was familiar, within half a block and in full view of a business-stand that he had occupied for years, raises, we think, a presumption of negligence directly contributing to the injury, which, in the absence of something in rebuttal, is necessarily fatal to a recovery. Had this cellar-way been a sheer precipitous descent, it would undoubtedly have been culpable negligence to have it without a railing at the east end, and exposed for a distance of two feet along the line of the sidewalk; but it does not appear to have been any want of ordinary care in the owner of this building not to extend the railing on the south side past the head of the steps, and not to have a gate

at the east side.   The railing extended along the street to
the point at which it might prudently be supposed that all
probable danger of accident to one at all capable of taking
care of himself would cease.   The sidewalks of a city can-
not be made absolutely safe, and are not intended for the
use of blind people.   One turning short from the alley and
taking a step of eight inches would not step into a gulf, but
would find himself at the head of a mere stairway, such as
may be found in the business streets of most large cities,
such as are common and inevitable in narrow streets every-
where, and such as have always existed in St. Louis, where
Buesching had resided for many years.   Deceased and
defendant were both bound to ordinary care ; that is, to that
degree of care which persons of ordinary prudence are accus-
tomed to employ under the same circumstances, having due
regard to the rights of others and the objects to be accom-
plished.   If this stairway was constructed with ordinary
care, and deceased fell into it through negligence, there can
be no recovery.

It is plain that there is a presumption that no one walking
along Pine Street at night, with a gas-light burning within
thirty-five feet of him, using ordinary care and keeping his
eyes about him, would fall down such a cellar-way as this.
In an incautious moment the most prudent man might take
a backward step, or a step sideways, and fall down any stair-
case ; but it does not follow from this that a cellar-entrance
may not be built in a frequented street, or that it must be
guarded by a gate, and that the absence of such a guard is
a want of ordinary care which will subject the property-
owner to an action at the hands of any one who falls down
the steps.

The want of ordinary care on the part of deceased is a
presumption raised by the undisputed facts of the case.   It
is claimed by appellant that the want of proper care on the
part of deceased is admitted by the pleadings.   For the
purposes of this case, however, there is no such admission.

If defendant so held, he should have moved for judgment on the pleadings. Parties will not be allowed to go to trial as if the issues were made up by the filing of a reply, and, when the evidence has all been heard as if the issues had been formally made up, to ask for judgment for want of a reply after the verdict is found. The filing of a reply is waived, and new matter as to which there has been a contest on the trial, if alleged in the answer, is taken to be denied if the point is not raised before the cause is submitted to the jury.

At the instance of plaintiff, the trial court directed the jury that if the cellar-entrance was dangerous to passengers, owing to the manner of its construction, and deceased was in consequence injured whilst exercising ordinary care, they should find for plaintiff; and further declared that ordinary care means that degree of care which may reasonably be expected of a person in the situation of deceased at the time of the accident. This definition of ordinary care is given in some text-books. But in view of the evidence in this case it was calculated to mislead. There was some testimony in this case from which the jury might infer that the deceased was not entirely sober at the time of the accident. A man not entirely sober might exercise all the care possible for one in his condition, but that would not be ordinary care as the phrase is used in reference to cases of this kind.

It is claimed by appellant that plaintiff should have followed the language of the statute in the instruction asked by him and given by the court as to the measure of damages, and that that instruction was bad because it did not direct the jury to have regard to the mitigating or aggravating circumstances of the case. It cannot, however, be error to omit these words where the case presents no circumstances of mitigation or aggravation, and we see nothing in this objection in the present case.

In this case, as presented, there are the two facts of the

existence of this cellar and of Buesching being found dead in it.    There is a wide field, for conjecture, but nothing from which a fair inference can be drawn as to how he got there. Perhaps he was pushed in ; perhaps he threw himself in ; perhaps he staggered into it whilst intoxicated ; perhaps he was standing at the head of the steps, and thoughtlessly stepped backwards ; perhaps he ran into it whilst trying to escape some real or fancied danger.    The plaintiff cannot recover on this evidence unless defendant was liable solely for having such a cellar-way as the one described, or for having it unenclosed at the head of the steps and for two feet next to the top step at the side.    To hold property-holders, as a matter of law, liable whenever one, not shown by any evidence aside from the fact of his fall to have been negligent at the time, falls down such an opening, would be to establish an unjust rule.    In the absence of any enactment prohibiting such entrances to the basement of buildings, or requiring them to be guarded by a gate, it would seem that the leaving of such entrances open at the end, and for the width of the top step, as in the case at bar, is not such carelessness or negligence as to be the efficient cause of any accident which may occur.    If injury by falling into such a stairway happens to one fit to go about alone, it would seem that it must be his own fault ; if such an accident happens to a mere child, or to an idiot, it may be pure casualty, or the fault of those that have him in their care.    Those walking in the city are bound to take notice of the existence of such constructions as the necessities of commerce and the convenient occupation of residences render common, and if injured by them must blame themselves.

The judgment is reversed and the cause remanded.    All the judges concur.