Buesching v. The St. Louis Gaslight Company.

BUESCHING, *Appellant*, v. THE ST. LOUIS GASLIGHT COMPANY.

1. **Excavation at Street Line**: DUTY AND LIABILITY OF OWNER OF PREMISES—OF HIS TENANT: NEGLIGENCE: NUISANCE. A lot owner has an undoubted right, in the absence of any law or ordinance to the contrary, to make and maintain an opening or area in his lot at the street line; but it is his duty so to guard it as to render it secure for persons using the street; and he is liable to all persons lawfully using it, who, while exercising ordinary caution, are injured by reason of his neglect to provide guards; and the liability is the same however long the premises may have been in that condition, and though there were other such openings in the vicinity; and it attaches to a tenant equally with the owner—and this though the opening was there before the tenancy began.

2. **Negligence**: PRESUMPTION OF CARE: CONTRIBUTORY NEGLIGENCE: BURDEN OF PROOF: EVIDENCE NECESSARY TO NON-SUIT PLAINTIFF. The court re-affirms the rule that it is not incumbent upon the plaintiff, in an action for negligence, in the first instance to show that he was free from negligence or in the exercise of ordinary care at the time of receiving the injury complained of, but that the concurring negligence of plaintiff is a matter of defense, and the burden of show-

| 73 | 219 |
| 96 | 109 |
| 32a | 59 |
| 32a | 69 |
| 32a | 642 |
| 32a | 676 |
| 32a | 680 |
| 33a | 340 |
| 73 | 219 |
| 99 | 158 |
| 73 | 219 |
| 100 | 201 |
| 100 | 681 |
| 36a | 619 |
| 36a | 679 |
| 73 | 219 |
| 41a | 145 |
| 73 | 219 |
| 43a | 35 |
| 73 | 219 |
| 104 | 250 |
| 105 | 560 |
| 73 | 219 |
| 46a | 186 |
| 73 | 219 |
| 48a | 485 |
| 73 | 219 |
| 111 | 158 |
| 49a | 370 |
| 52a | 52 |
| 117 | 20 |
| 117 | 485 |
| 73 | 219 |
| 55a | 404 |
| 73 | 219 |
| 124 | 245 |
| 60a | 120 |
| 60a | 605 |
| 73 | 219 |
| 129 | 93 |
| 73 | 219 |
| 135 | 567 |
| 73 | 219 |
| 143 | 202 |
| 74a | 144 |

Buesching v. The St. Louis Gaslight Company.

73 219
146 580
79a 452

73 219
81a 228

73 219
83a 542

73 219
160 636

73 219
161 429

73 219
89a 127

73 219
164 199

73 219
166 468
90a 482
91a 66

73 219
176 [2]606
98a [5]357
99a [3]172
99a [3]369
99a [3]400

73 219
179 [2]578

ing it is, therefore, upon the defendant. If, however, it appears, without any conflict of evidence, from the plaintiff's own case, or from the cross-examination of his witnesses, that he was guilty of negligence proximately contributing to produce the injury, it is the duty of the court to take the case from the jury, by declaring, as a a matter of law, that the plaintiff cannot recover.

3.  **Demurrer to Evidence**: WHAT INFERENCES OF FACT THE COURT MAY DRAW. In passing upon a demurrer to the evidence, the court is required to make every inference of fact in favor of the party offering the evidence which a jury might, with any degree of propriety, make in his favor; and if, when viewed in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained. But the court is not at liberty to make inferences of fact in favor of the demurrant, to countervail or overthrow either presumptions of law or inferences of fact in favor of the other party. Hence, where knowledge on the part of the plaintiff's intestate of the existence of a dangerous opening might, if proven, have been fatal to recovery; *Held*, that, upon a demurrer to the evidence, the court could not infer such knowledge from the single fact that the intestate, (a man whose faculties were apparently not called in question,) had for several years lived on the same street, within half a block of the opening.

4.  **Dangerous Excavations near the Highway**: RIGHTS AND DUTIES OF TRAVELERS: NUISANCE. No one is required to abandon a convenient or accustomed route of travel in a city because of a dangerous excavation near the highway, unless the use of the way under the circumstances would be inconsistent with the exercise of reasonable and ordinary care. A traveler, if injured thereby, may recover notwithstanding his knowledge of the danger, provided he was at the time using ordinary care.

5.  ——— : THE RULE OF NEGLIGENCE IN SUCH CASE. It cannot be laid down as a legal proposition that one who falls into an unconcealed opening adjoining a highway is guilty of negligence if he did not see it, and if he did see it, is guilty of negligence in not avoiding it. The true rule is, that he is guilty of negligence if he did not see it, provided he would have seen it by exercising ordinary care; and if he saw it he is guilty of negligence in not avoiding it, provided he could have avoided it by the exercise of ordinary care.

6.  **Personal Injuries**: PRESUMPTION OF ORDINARY CARE: EVIDENCE. The law presumes that the plaintiff in an action to recover damages for injuries sustained at the hands of another, was at the time of the injury in the exercise of ordinary care. Slight circumstances, however, in the absence of direct evidence, may overthrow this presumption. The habits and character of the person injured, his mental and physical condition shortly before the injury, the location

and character of the object or instrumentality causing the injury, and the nature of the injury itself, are all to be considered by the jury.

7. **Meaning of the word " Situation."** The trial court declared the law to be that " ordinary care means that degree of care which may reasonably be expected of a person in the *situation* of plaintiff's husband at the time the accident occurred." *Held*, that the word "situation " as here used has reference to the probable surround: ings of plaintiff's husband at the time of the accident, not to his physical and mental condition; and the instruction could not, therefore, be construed to mean that if plaintiff's husband was not entirely sober at the time of the accident, of which there was some evidence, he had fulfilled the requirements of the law as to ordinary care if he took such care as a man not entirely sober would take.

*Appeal from St. Louis Court of Appeals.*

Reversed.

*Broadhead, Slayback & Hauessler* for appellant.

Upon the testimony adduced for the plaintiff, a *prima facie* case of negligence on the part of defendant was made out. It showed a careless and dangerous pitfall constructed by defendant in the very heart and center of a great city; that defendant had failed to erect any railing or guard to protect passengers from falling therein, where so many were liable to fall; that plaintiff's husband had been caught in the trap of defendant, and was found dead in it under circumstances necessarily justifying the inference that the fatal disaster could never have happened but for the negligence of defendant. The evidence warranted the circuit court in submitting the case to the jury. *Hall v. Fond du Lac*, 42 Wis. 274; *Congreve v. Smith*, 18 N. Y. 79; *Cassidy v. Angell*, 12 R. I. 447; *Morgan v. I. & St. L. B. Co.*, 5 Dill. C. C. 96; *s. c.*, 7 Cent. Law Jour. 311; *Cooley on Torts*, p. 660; *Vale v. Bliss*, 50 Barb. 358; *Stratton v. Staples*, 59 Me. 94; *Davis v. Hill*, 41 N. H. 329; *Baltimore & Ohio R. R. Co. v. Boteler*, 38 Md. 568; *Beck v. Carter*, 68 N. Y. 283; *Wettor v. Dunk*, 4 Fost. & Fin. 298; *Willey v. Portsmouth*, 35 N.

H. 303 ; *Coggswell v. Lexington,* 4 Cush. 307 ; *Hayden v. Attleborough,* 7 Gray 338 ; *Jones v. Waltham,* 4 Cush. 299 ; *Palmer v. Andover,* 2 Cush. 600 ; *Barnes v. Ward,* 2 Carr. & Kir. 666 ; *Staples v. Town of Canton,* 69 Mo. 593 ; 2 Dillon Munic. Corp., § 789 ; *Oliver v. Kansas City,* 69 Mo. 79 ; *Blake v. St. Louis,* 40 Mo. 569 ; *Bowie v. Kansas City,* 51 Mo. 454 ; *Hicks v. P. R. R. Co.,* 64 Mo. 439 ; *Bassett v. St. Joseph,* 53 Mo. 298.

The fact that the premises were in the possession of a tenant and not of the gas company, does not relieve the latter of liability. Shearman & Redfield on Neg., §§ 498 to 502 ; Wharton on Neg., § 817 ; *Leslie v. Pounds,* 4 Taunt. 649 ; *Bishop v. Trustees, etc.,* 28 Law Jour. Q. B. 215 ; s. c., 1 Ell. & Ell. 697 ; *Durant v. Palmer,* 5 Dutch. (29 N. J. L.) 544 ; *Pickard v. Collins,* 23 Barb. 444 ; 1 Addison on Torts, 197, 202, 203, 205, 206, 228. If it be true that it is customary for such pitfalls to be exposed in the crowded streets of St. Louis, (which we deny,) it is full time that a stop should be put to such an unlawful and murderous custom. Human life is sufficiently precarious without multiplying reckless devices for its untimely taking off. The idea that a man can be allowed to dig a deadly pit right in the path of thousands of human beings, and then claim it is all right because others do it ; or because others have passed that way and yet escaped ; or, because every man must be on the everlasting alert and keep himself out of it, or stand the blame of his misfortune, which could never have happened but for the reckless act of the trap-maker, presents a mode of reasoning that has never received the sanction of our more enlightened tribunals. *Morissey v. Wiggins F. Co.,* 47 Mo. 521.

*Cline, Jamison & Day* for respondent.

1. The proof established the fact affirmatively, that deceased must have been guilty of negligence in getting into the cellar-way, and becoming the first victim of an accident, since its construction, in twenty-four years. When

the nature and character of the accident, (in the absence of any proof whatsoever showing how it occurred,) discloses a presumption of negligence in the deceased, or makes it probable that he failed to exercise the ordinary care of prudent and careful men, in passing the point of danger, then the plaintiff is not entitled to recover. *Thompson v. N. M. R. R. Co.*, 51 Mo. 190. As the alleged negligence of defendant was inert, and the deceased at the time of the accident, was the active party and is alleged to have been walking along the street, by his own volition he brought himself in contact with the danger, and this made it incumbent on him to exercise ordinary care; and under the circumstances of this case, should have pleaded and proved the fact.

2. By the second instruction given for the plaintiff the jury were told that "ordinary care means that degree of care which may reasonably be expected of a person in the situation of plaintiff's husband at the time the accident occurred." What could be reasonably expected of a man in his situation, and what was his situation at the time he received the injuries? It seems he was drunk. What would reasonably be expected of a drunken man navigating the wet and slippery street in the night time? That he would stagger into this or some other stairway and break his neck, although the street had been used in its present condition for twenty years without accident. The definition of ordinary care furnished by this instruction is unknown both to the common and civil law. Shearman & Redfield on Neg., § 30; *Mackey v. N. Y. Cent. R. R. Co.*, 27 Barb. 542; *Toledo, etc., R. R. Co. v. Goddard*, 25 Ind. 185; *Cleveland R. R. Co. v. Terry*, 8 Ohio St. 570; *Pa. R. R. Co. v. McTighe*, 46 Pa. St. 316; *Mackay v. N. Y. C. R. R. Co.*, 35 N. Y. 75.

3. If the deceased had been stricken down by defendant while in the street, the mere fact of his being on the street would be sufficient justification to him. But as he was found in defendant's cellar-way at the side of the

street, it becomes obligatory on plaintiff to allege and prove that he got there without any negligence on his part, and the mere fact that he was found there, is no justification for his getting there, nor does it exclude the presumption of his getting there by reason of his own carelessness, or tend to show that he was in the exercise of ordinary care at the time. *Murphy v. Deane*, 101 Mass. 466; *Trow v. Vt. C. R. R. Co.*, 24 Vt. 487; *Birge v. Gardiner*, 19 Conn. 507; *Warren v. Fitchburg R. R. Co.*, 8 Allen 227; *Allyn v. B. & A. R. R. Co.*, 105 Mass. 77; *Baird v. Morford*, 29 Iowa 539.

4. The plaintiff should have been non-suited. *Bridges v. N. L. Ry. Co.*, L. R., 7 H. L. 213; *Skelton v. L. & N. W. Ry. Co.*, L. R., 2 C. P. 631; *Pennsylvania R. R. Co. v. Rathgeb*, 32 Ohio St. 66; *Havens v. E. Ry. Co.*, 41 N. Y. 296; *Galena, etc., R. R. Co. v. Loomis*, 13 Ill. 539; *Ernst v. H. R. R. R. Co.*, 39 N. Y. 61; *Harlan v. St. L., K. C. & N. Ry, Co.*, 64 Mo. 480; s. c., 65 Mo. 22; *Fletcher v. A. & P. R. R. Co.*, 64 Mo. 484; *Railroad Co. v. Houston*, 95 U. S. 697; *Maher v. A. & P. R. R. Co.*, 64 Mo. 267; Wharton on Neg., § 384; Shearman & Redfield on Neg., §§ 488, 488 a; *Gorton v. E. Ry. Co.*, 45 N. Y. 662; *Cotton v. Wood*, 8 C. B. (N. S.) 566; *Brown v. St. P. & M. Ry. Co.*, 22 Minn. 165; *Reynolds v. N. Y. C. & H. R. R. R Co.*, 58 N. Y. 248; *Johnson v. Hudson R. R. Co.*, 20 N. Y. 66; *Wilds v. Hudson R. R. Co.*, 24 N. Y. 430; *Davis v. N. C. & H. R. R. Co.*, 47 N. Y. 400.

Hough, J.—This was an action against the St. Louis Gaslight Company, as owner, and one Barnes, the tenant in possession of a certain building on Pine street, in the city of St. Louis, for negligence in not guarding the entrance to an area or opening in front of said building, and abutting upon the sidewalk, into which it is alleged the plaintiff's husband fell on the night of January 22nd, 1876, and was thereby killed.

The building in question is located on the north side

of Pine street and on the west side of and adjoining an alley which runs north and south through the block lying between Second and Third streets. All the houses on the north side of Pine street between the alley and Third street are set back two feet and six inches from the north line of the sidewalk. The opening in question is about eight feet long, east and west, three feet nine inches deep, and two feet five inches wide, and is, therefore, outside the sidewalk and on defendant's ground ; and, being designed to furnish means of descent to the cellar or basement of their building, had five straight stone steps, and two winding ones at the bottom leading to the basement door. The top step, which is eight inches wide, is flush with the east wall of the building, which is on the west line of the alley, and the descent into the cellar, therefore, begins just eight inches from the east wall. This opening is guarded by a railing at the west end, and had also a railing on the south side, extending to within two feet of the east edge of the top step, so that persons might step from the sidewalk on the second step. But the eastern end or entrance had no guard or barrier of any kind. There are several openings of the same kind in the block, and the testimony tended to show that similar openings existed throughout the city.

Buesching, at the time of his death, kept a saloon on Chestnut street between Main and Second streets, two blocks distant from the place of the accident, and lived with his family over his saloon. He was an industrious man, attentive to his business, and though in the habit of drinking, was not a drunkard. He was last seen alive by the barber at a shop on Olive street, near Second, who knew him well, and had been in the habit of shaving him every Saturday night for two years. At 9 o'clock p. m., of January 22nd, which was Saturday, Buesching went to this barbershop and was shaved. He waited until the shop was closed, and asked the barber to take a drink with him, which he declined to do. It does not appear that deceased took a drink, and the testimony is that there were no sa-

15—73

loons then open in that vicinity.     The barber testified that when he was at the shop he was rational and knew what he was about.   He could not say that he had been drinking, for he saw no effects of it.   He further testified:   "He might have been drinking, but I never saw him so intoxicated as not to be able to take care of himself and to walk, and never saw him stagger, and never saw him affected by liquor."   They walked together from the shop to the corner of Second and Olive streets, where they separated about a quarter to ten o'clock, the barber going west on Olive and the deceased going north on Second.   At the time it was thawing and raining, the walks were muddy and slippery, and Buesching was wearing low-cut slippers, and had neither overcoat nor umbrella.   He was never seen alive afterward.

On the next morning, about seven o'clock, he was found dead at the bottom of the cellar entrance in front of the gas company's building, lying on his back, with his feet up the steps and his head against the basement door, with his neck broken, and no marks of personal violence on his body.   His watch and other valuables were on his person.   His pantaloons were unbuttoned for a short distance in front, and there was a urinal in the alley.   There was a gas lamp burning that night on the opposite side of the street, thirty-four feet from the cellar-way in which Buesching was found.   He had kept a saloon for six years at the corner of Second and Pine streets, half a block distant from this cellar-way, which had then been there for nearly twenty years.   The plaintiff recovered judgment in the circuit court, which was reversed by the court of appeals, the latter court holding that on the facts stated the circuit court should have taken the case from the jury.   The plaintiff brings the case here by appeal.

As the opening was upon defendant's own ground, although abutting upon the sidewalk, they had an undoubted

**1. EXCAVATION AT STREET LINE: duty and liability of owner of premises —of his tenant: negligence: nuisance.** right, in the absence of any law or ordinance to the contrary, to make and maintain it, but it was their duty to so guard the entrance as to render it secure for persons using the sidewalk, and they are liable to all persons lawfully using the sidewalk, who, while exercising ordinary caution, are injured thereby. This, we think, is well established by the authorities. In Cooley on Torts, page 660, it is said: "If one make an excavation so near the line of the highway, that one lawfully making use of the highway might accidentally fall into it, his duty to erect guards as a protection against such accidents is manifest, and he will be responsible for injuries occasioned by his neglect to do so." In Shearman & Redfield on Negligence, section 360, it is said: "Where an area is excavated by the side of the street, it must be surrounded by a secure fence, and where an opening is made into a cellar, it must be covered with a lid or flap of ordinary and sufficient strength. The want of such guards creates a public nuisance, for which the tenant is liable to any person injured thereby, even though the premises were leased in that condition." If the owner lets the premises with the nuisance upon it, and the tenant allows it to remain, they are jointly and severally liable for injuries occasioned thereby. Ib., § 361. In *Coupland v. Hardingham*, 3 Camp. 398, it appeared that there was an area in front of defendant's house, which was descended to by three steps from the street, and from which there was a door leading into the basement story of the house; there was no railing or fence to guard the area from the street, and the plaintiff passing by on a dark night fell into it and had his arm broken. The defense set up was that the premises had been in exactly the same situation as far back as could be remembered, and many years before the defendant was in possession of them. Lord Ellenborough said that however long the premises might have been in this situation, as soon as the defendant took possession of them he was bound to guard against the danger to which the public had been before exposed, and that he was liable

·for the consequences of having neglected to do so, and the learned judge said, that the area belonged to the house, and it was a duty which the law cast upon the occupants of the house to render it secure.    Thompson on Neg., 327.

In *Jarvis v. Dean*, 3 Bing. 447, the plaintiff recovered damages for injuries sustained by falling into an open, unguarded area adjoining the street, and no question was made as to his right of action.    *Barnes v. Ward*, 67 Eng. Com. Law 392, (9 Man.Gran. & S.,) was an action under Lord Campbell's act, brought by the administrator of Jane Barnes to recover damages for her death, occasioned by the failure of the defendant to properly guard, fence off and rail in a certain hole or area abutting upon the footway, into which while lawfully passing upon said footway she slipped and fell.    This case was most elaborately argued, and in consequence of doubts entertained by the court as to the duty of the defendant to fence off the excavation, a second argument was directed, and after the fullest consideration, and an examination of the original *nisi prius* records in *Coupland v. Hardingham* and *Jarvis v. Dean*, as to the location of the areas in question in those cases, the court said : "It appears to us, after much consideration, that the defendant, in having made that excavation, was guilty of a public nuisance, even though the danger consisted in the risk of accidentally deviating from the road." So, also, in the case of *Hadley v. Taylor*, Law Rep., 1 C. P. 53, Erle, C. J., said :    "The plaintiff seeks compensation for an injury which he has sustained through falling into a hole on the defendants' premises.    The hole was not upon the public highway, but distant from it about fourteen inches.    I think, however, the defendants (assuming them to be in possession of the adjoining premises) would be liable for a nuisance to the highway, if the excavation were so near to it that a person lawfully using the way and using ordinary caution, accidentally slipping, might fall into it." To the same effect are *Snow v. Provincetown* 120 Mass. 580 ; *Bush v. Johnson* 23 Pa. St. 209, and *Temperance Hall Asso. v. Giles*,

33 N. J. L. 260. In the case last cited, it was held that in order to show that the area in question was not a nuisance, it was not competent to prove that over tèn thousand persons had passed and repassed the area every year after it was made, without accident; that such areas were common in the city; and that it was the custom to protect them as the area in question was protected. There can be no question then, as to the liability of the defendants, if the deceased was, at the time he was precipitated into the opening, in the exercise of ordinary care.

It has been repeatedly decided by this court that it is not incumbent upon the plaintiff, in the first instance, to show that he was free from negligence, or in the exercise of ordinary care at the time of receiving the injury complained of, but that the concurring negligence of the plaintiff is a matter of defense, and the burden of showing it is, therefore, upon the defendant. If, however, it appears, without any conflict of evidence, from the plaintiff's own case, or from the cross-examination of his witnesses, that he was guilty of negligence proximately contributing to produce the injury, it would be the duty of the court to take the case from the jury, by declaring as a matter of law that the plaintiff cannot recover.

*2. NEGLIGENCE: presumption of care: contributory negligence: burden of proof: evidence necessary to non-suit plaintiff.*

We are thus brought to a consideration of the main question in this case: Has the court of appeals erred in deciding that the circuit court should, on the plaintiff's own testimony, have declared that the plaintiff could not recover? The point is not without difficulty. Two main facts, however, are clear: First, that the defendants were guilty of negligence in leaving the opening unguarded at its entrance. Second, that the plaintiff's husband was found on the morning of January 23rd, 1876, lying on his back with his neck broken, his head and shoulders at the bottom of the passage, and his feet and limbs resting on the steps above him, his body free from any marks of personal violence, and his watch and money and other valu-

ables unmolested. We think it a fair and reasonable inference from the surroundings and condition of the deceased when found, that he was not murdered, although the facts proven do not absolutely exclude the possibility of murder. There is no presumption of law that deceased committed suicide—and if his surroundings when found did not indicate how he came to be there, the presumption would be that it was the result of accident. *Lancaster v. Washington L. Ins. Co.*, 62 Mo. 129. It is not shown how, or at what hour, he got there. No witness saw him fall, but his position and condition when found would indicate that he did fall, either sidewise or backward, head-long down the steps. The physical facts, just mentioned, taken by themselves, are sufficient to warrant a jury in drawing such an inference as to the manner of his death. Courts and juries constantly act upon such testimony, and we do not understand its sufficiency for this purpose to be denied by the counsel for the defendants.

Taking it for granted, then that Buesching fell into the opening, or what is tantamount thereto, that there is 3. DEMURRER TO EVIDENCE: what inferences of fact the court may draw. testimony from which that fact could be found, the next question is, is there evidence on which a jury should be permitted to find that at the time of his fall the deceased was in the exercise of ordinary care. The argument of defendants' counsel is, that if the deceased saw this entrance, he was negligent in not avoiding it. If he did not see it, he was negligent in not looking, as it was in plain view and well known to him, and had been for years before; that ordinary care and prudence required him to look to his steps, and had he done so, he could not have failed to see it; and therefore, it follows that he came to his death by reason of his own negligence contributing thereto. It does not appear from direct and positive testimony that the deceased knew of the existence of the opening in question—one witness does indeed say " he knew of the condition of the street, for it had been in the same condition for ten or fifteen years,"

but this statement plainly imports no more than that the witness supposed he knew it because it had existed for ten or fifteen years. Knowledge on the part of the deceased may, however, be inferred from the fact that he lived for several years on the same street, within half a block of the opening. But this is an inference of fact favorable to the defendants, which it is not permissible for the court to draw, in passing upon a demurrer to the evidence. Such inference could only be drawn by a jury after the submission of the cause to them on the merits. In passing upon a demurrer to the evidence, the court is required to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor, and if, when received in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained. *Wilson v. Board of Education*, 63 Mo. 137. But the court is not at liberty, in passing on such demurrer, to make inferences of fact in favor of the defendant, to countervail or overthrow either presumptions of law or inferences of fact in favor of the plaintiff; that would clearly be usurping the province of the jury. So that if it were essential, in order to sustain the demurrer to the evidence, that it should appear to the court at the close of plaintiff's case that the deceased had knowledge of the opening in question, inasmuch as such knowledge could only appear by way of inference in favor of the defendant from facts which were proven, the demurrer could not be sustained. In weighing the argument of the defendants, then, the element of previous knowledge of the nuisance is to be eliminated.

It may be proper, however, to remark in this connection, that the rule which obtains between master and servant, where there is knowledge on the part of the latter of dangerous defects in tools, apparatus, machinery, structures or grounds, furnished by the master, with which, or in which, as the case may be, the servant is required to work, is inapplica-

4. DANGEROUS EXCAVATION NEAR THE HIGHWAY: rights and duties of travelers: nuisance.

ble in its fullest extent to the relation which exists between the traveler upon a highway and the proprietor of the adjacent lands, who maintains a nuisance thereon abutting upon the highway and likely to produce injury. In the former case, unless there is complaint by the servant and a promise to repair by the master, the servant is held to assume the risk if he remains in the master's employment. In the latter case, no person is required to abandon a convenient or accustomed route of travel in a city, because of dangerous excavations near the highway, unless the use of the way under such circumstances would be inconsistent with the exercise of reasonable and ordinary care. *Barton v. Springfield*, 110 Mass. 131; *Snow v. Provincetown*, 120 Mass. 580. And the traveler, if injured thereby, may recover, notwithstanding his knowledge of the existence of the nuisance, provided he was at the time using ordinary care. *Smith v. The City of St. Joseph*, 45 Mo. 449; Thompson on Neg., pp. 1203, 1204, 1205, 1206, §§ 52, 53; Shearman & Redfield on Neg., § 414.

The argument for the defendants, then, with the element of previous knowledge eliminated, stands thus: As the opening was not concealed, but was obvious to the sight, the deceased was guilty of negligence if he did not see it, and if he did see it, he was guilty of negligence in not avoiding it. These propositions are stated as abstract propositions, which must, if true, obtain in all cases, and not in this case only, for the circumstances under which Buesching failed to see the cellarway, or seeing it, failed to avoid it, are not shown by the testimony. These propositions, then, if they are true, and mean anything as applied to this case, mean that Buesching should, no matter what the circumstances surrounding him at the time, have seen the hole into which he fell, and seeing it, should, no matter how great the difficulty of so doing, have avoided it. If such be the law, it is quite plain that there never could be a recovery for an injury occasioned by an obvious defect in a highway. But such is not the

5. —— : the rule of negligence in such case.

law. The law is that the deceased was guilty of negligence if he did not see it, provided he would have seen it by exercising ordinary care; and seeing it, he was guilty of negligence in not avoiding it, provided he could have avoided it by the exercise of ordinary care.

Now, the law presumes that the deceased was in the exercise of ordinary care; and this presumption is not 6. PERSONAL INJU- overthrown by the mere fact of injury. RIES: presump- Shearman & Redfield on Neg., § 44; *Hoyt v.* tion of ordinary care: evidence. *The City of Hudson,* 41 Wis. 105, 111; *s. c.,* 22 Am. Rep. 714; *Gay v. Winter,* 34 Cal. 153. This presumption of due care always obtains in favor of a plaintiff in an action to recover damages for an injury sustained by him through the alleged negligence of another. If it were otherwise, the decisions of this court, which require the defendant to plead and prove as a defense the contributory negligence of the plaintiff or deceased, would be absurd. Slight circumstances, however, in the absence of direct evidence, may overcome the presumption of freedom from negligence which the law indulges. The habits and character of the person injured, his mental and physical condition when last seen before the injury, the location and character of the object or instrumentality causing the injury, and the nature of the injury itself, are all to be taken into consideration by the jury in determining whether he was free from fault when injured.

In the case before us, there is no testimony whatever showing what the conduct of the deceased was when he fell into the opening, and the presumption of law being that he conducted himself with due care, it was for the jury to draw such inferences from the facts in evidence as would overthrow that presumption, and not for the court. *Barton v. Railroad Co.,* 52 Mo. 253; *Fernandes v. Sacramento City R. R. Co.,* 52 Cal. 45; *Hoyt v. City of Hudson,* 41 Wis. 105, 111; *Gay v. Winter,* 34 Cal. 153. If it clearly appeared from the testimony of the plaintiff, without any contradiction, that the deceased was, when last seen, so

intoxicated as to be incapable of exercising ordinary care, the circuit court might very properly have taken the case from the jury. But such is not the testimony. We are of opinion that the circuit court did right to submit the case to the jury.

This being so, it only remains to inquire whether there is any error in the instructions given at the request of the 7. MEANING OF THE WORD "SITUA-TION." plaintiff. Only one instruction asked by the defendants was refused, and that was properly refused. It does not correctly state the law. The only instruction given for the plaintiff, which is commented upon adversely by the court of appeals, and indeed the only one about the correctness of which there can be any question, is the third, the first paragraph of which defines ordinary care as follows: "The court declares the law to be, that ordinary care means that degree of care which may reasonably be expected of a person in the situation of plaintiff's husband at the time the accident occurred." It is objected that as there was some testimony from which a jury would be at liberty to infer that the deceased was not entirely sober at the time of the accident, this instruction was calculated to mislead, as what is known to the law as ordinary care is not to be expected of a person not entirely sober. We do not understand the word "situation" in this instruction to be used as denoting the physical and mental condition of the deceased, but as referring to his probable surroundings at the time of the accident. Under this instruction, if the jury believed that the deceased was not in a condition of mind or body to exercise that degree of care called for by his "situation" or surroundings, of course they should have found for the defendants; and we see nothing in the case calculated to prevent them from taking that view of the instruction. The same phraseology is employed in some text books and in some adjudged cases, and it might, under some circumstances, be misunderstood and be calculated to mislead the jury, but as we find no reference whatever in the instruc-

tions of the defendants, or in any of the instructions fo the plaintiff to the physical or mental condition of the deceased, it is fair to presume that no such question was made before the jury. We think it plain, therefore, that the defendants have suffered no injury from the use of the word " situation " in the instruction.

It is unnecessary to comment upon the instructions given for the defendants. What we have said will indicate how far we deem them correct. The judgment of the court of appeals will be reversed, and that of the circuit court affirmed. The other judges concur, except SHERWOOD, C. J., who did not sit.