LAURA BENDER, Respondent, v. GEORGE WEBER et al., Appellants.

St. Louis Court of Appeals, Submitted October 27, 1908. Opinion Filed July 6, 1909.

(Opinion by Nortoni, J.)

1. PERSONAL INJURIES: Contributory Negligence: Knowledge of Danger. In an action for personal injuries caused by plaintiff falling down an open areaway in an alley, mere knowledge of the danger is not sufficient to charge plaintiff with contributory negligence as a matter of law.

2. ————: ————: ————: Jury Question. And in such case where the place was not one of great and imminent danger, but one about which prudent persons moved with more or less carelessness, the question of whether plaintiff exercised or failed to exercise ordinary care was a question for the jury.

(Dissenting Opinion by Reynolds, P. J.)

3. ————: ————: ————. In an action for personal injuries caused by plaintiff falling down an open areaway the fact that she knew of the danger and was unmindful of its proximity and fell down the areaway, notwithstanding it was not in the direct line which she must travel, renders her guilty of contributory negligence as a matter of law.

4. PRACTICE: Evidence: Photographs: Remarks of Counsel. In an action for personal injuries, photographs of the scene of the accident, taken after the accident, were admitted in evidence and counsel for plaintiff in his argument to the jury, commented on the photographs to establish a fact which was denied by direct testimony of a number of witnesses; held, that it was error for the court to refuse to correct such statement of counsel when asked to do so by the opposing counsel.

Appeal from the St. Louis City Circuit Court.—*Hon. Chas. C. Allen,* Judge.

AFFIRMED AND CERTIFIED TO THE SUPREME COURT.

*Claud D. Hall* for appellants.

The court erred in refusing the instructions offered by defendants in the nature of a demurrer to the evi-

dence at the close of plaintiff's case and at the close of the whole case.    Buesching v. Gas Light Co., 6 Mo. App. 85; Larkin v. O'Neil, 119 N. Y. 221; Kean v. Schoening, 103 Mo. App. 77.    The court erred in refusing to correct or rebuke plaintiff's counsel, while making the closing argument to the jury, for exhibiting to the jury photograph No. 3 (taken after the accident) and saying, "are there in this picture, sworn to, brought here by them, are there not hinges on that upright there, don't you see there are?"    As to photographs, see: Kirkpatrick v. Railroad, 109 S. W. 686; Baustian v. Young, 152 Mo. 323; Edge v. Railroad, 206 Mo. 471.    As to repairs after accident, see: Alcorn v. Railroad, 108 Mo. 80; Mahoney v. Railroad, 108 Mo. 181; Nalley v. Carpet Co., 51 Conn. 524; Schermer v. McMahon, 108 Mo. App. 36.

*John A. Talty* and *E. V. Selleck* for respondent.

STATEMENT by REYNOLDS, P. J.—This is an action by plaintiff, respondent here, against the defendants, owners of premises fronting on Laclede and on Cardinal avenues, in the city of St. Louis.    The buildings were rented to various tenants, the lower ·or first floors of the buildings fronting on Laclede Avenue, Nos. 3041, 3043 and 3045, being used as stores, and the upper floors of these, as well as the buildings Nos. 8, 10 and 12 Cardinal avenue, being used as residences.    A granitoid paved alleyway, about seven feet in width, extends east from and off of Cardinal avenue, between the rear of the Laclede avenue premises and the south wall of No. 8 Cardinal avenue, and thence around in rear of Nos. 8, 10 and 12 Cardinal.    It has no exit to the north or east.    It was used by the different tenants of defendants who were occupying the buildings, as well as to some extent by the general public, in going and coming to and from the rear of the grocery and residences.    The second store from the corner of La-

clede and Cardinal, No. 3043 Laclede, was used and occupied by Woods Bros., tenants of defendants, as a grocery, their store building fronting on Laclede avenue and running back north to this alleyway.    The accident occurred in the rear of this grocery.   A fence and gate of trellis work ran across the west end of the alleyway, the gate without lock, through which entrance was obtained to the alleyway.    To the rear of the grocery there was an ordinary cellar opening (which we will hereafter refer to as the area), the east edge or end of it directly west of the west jamb of the rear door of the grocery.    A flight of stairs, starting at the top of the west end of this area, ran down to the bottom, by which access was obtained to the cellar under the grocery. This area was about ten feet deep, twenty-seven inches wide, eight feet six inches long.    The latch and knob of the grocery door were on the west edge of the door, hinges on the east, the door swinging inward to the south.    The area had an ordinary wooden railing, about two feet ten inches high across its west end and north side, an ordinary wooden post being at the northeast corner, the wall of the building was on the south side, and the west end was open, giving access to the steps leading to the bottom and into the cellar.    The space between the west door-jamb and east end or edge of the area opening was nine and one-half inches, the door sill a few inches, two or three, above the pave of the alleyway, the opening of the area level with that pave. The alley was between six and eight and a half feet wide; six feet where it enters from Cardinal, about eight and one-half feet between the wall of the grocery on the south and the wall of the dwelling on the north, so that there was about six feet, three inches in the clear in the alley between the side of the area railing and the side of the dwelling.

Plaintiff was employed as housekeeper for the tenant occupying No. 8 Cardinal avenue, which as before noted lies on the north side of the private alleyway.   On

Sunday evening, October 28, 1905, she was sent by her mistress to Woods' grocery. Her petition states that "as she was leaving said store by and through said rear door, . . . she fell into and through said opening or hole in said alleyway to the floor of said basement, whereby she was severely injured and crippled," and describes her injuries, which are quite serious. In her testimony plaintiff stated that she had been working at the house of Mrs. Conley, the tenant of No. 8 Cardinal avenue, for about two weeks prior to the accident; that she knew the premises and the alleyway or passageway; that it was used by people going into the store to buy groceries while it was occupied by the Woods brothers. Passageway was paved. She went to Woods' grocery on the evening of October 28th to get oysters and milk for Mrs. Conley. Asked what she did, she said, "I stepped into the store and was getting some things and wanted to speak to Mrs. Conley, and at that time I stepped into the hole." Had gone only a few steps into the store when she turned back. There were ash bins and bread boxes in the alleyway and openings or areaways to cellars in it. At the time of the accident had come into the passageway from Cardinal avenue. Passageway was seven or eight feet wide. Had seen bread men leave bread in the boxes in the alley and Woods come out of the rear door and get it. Continuing, witness said, "The steps were too steep for me to hit and I stepped in just like you would drop your head down and fall in." Said the area was about ten feet deep, six feet long and about half a yard wide, a banister around it, the steps leading down from the east end of the opening, westwardly, toward Channing avenue. The east end where the steps lead down was open. It was close to seven o'clock, "and getting dark, just getting dusk," at the time of the accident. Went into the store by the rear door; "got part way in and stepped out the same way I went in; stepped out facing forwards;" had hold of the door knob; stepped with her right foot

and went down and clung to the door knob, but it was too late. The door knob was on the west side, next to the opening of the area or cellarway. Fell about ten feet to the bottom of the opening and was unconscious for awhile; her eye dropped out and her temple was cut and opened; could not see for sometime afterwards; her left hand was broken and she has little strength in it and still suffers from it; was also bruised about her face and head. On cross-examination plaintiff testified that on the day of the accident she was employed at Mrs. Conley's as a housegirl; had gone to Mrs. Conley's to get employment about two months prior to the accident; had been a neighbor and at her house previous to her employment but not very often; had never been through the alleyway previous to her employment by Mrs. Conley. She used the alleyway or passageway in going to the Woods' store but not often; had used the alleyway about three times previous to the accident. There were other areas besides the one she fell into in this alley, but had never noticed one so close to the door as the one she fell into. She had been in and out of the store door where the accident occurred three or four times before the accident, not any more. The cellarway or areaway she fell in was in plain view but she never noticed it was so close to the door. Saw the banisters on the west side and on the north side of the areaway; she saw the opening on the east end of the areaway, where the steps begin to lead down, but did not know it was so close and dangerous; saw it but did not know it was so close. Knew the east end of the areaway was open but did not know it was so close. Knew the east end of the areaway, where the steps begin to lead downward, was open all the time she worked at Mrs. Conley's, which was for about two weeks prior to the accident. On the occasion of the accident she went to the store from Mrs. Conley's house, into the alleyway, and from the alleyway stepped into the store. Took hold of the door knob

and turned it and walked in. Mrs. Conley had told her to go into the store; she (witness) had business there. Mr. Woods and one or two others were in the store. She started to buy something but forgot and wanted to speak to Mrs. Conley about something before she made the purchase. Wanted to step back and speak to her. Had a bucket in her hand to get the oysters. Only said, "Good evening," to the gentlemen in the store and was only in the store long enough to step out, "just stepped in and stepped out." She came right straight out of the door and started west toward Cardinal avenue; had left her bucket in the store; had started to go west because it was lighter; could see better in that direction. It was just getting dusk. She stepped forward out of the door, stepped forward and her foot sank down. She knew the cellarway was there but did not know that it was so near the door. She had used the back door because Mrs. Conley went that way and the tenants and people across the way used it. This alleyway, she said, was shut off by the gate and was for the purpose of permitting tenants to go into the rear of their own respective premises. Witness had used it in going to Mrs. Conley's back door and to go from the back door of Mrs. Conley's to the street, Cardinal avenue. The rear door of Woods' grocery opening on the alleyway was sometimes open; in the summer time it was always open, "a full passageway for everybody." This time of the accident was not exactly summer; it was getting cool and was on Sunday night. The store was open. Witness had probably opened the door herself; it was unlocked. Describing the alleyway, the premises and the area, and the railing around it, witness said that the only part not protected around the areaway was the east opening, which was west of the rear door of Woods' grocery. On redirect examination plaintiff said she had been in the grocery store about three times previous to the accident. On recross-examination plaintiff said she could see the rear door of the

grocery by looking out from Mrs. Conley's house; could see everything in the alleyway; knew the areaway or cellarway was there but did not know it was so dangerous; saw it but she never noticed it being at the door there.

This was substantially all of the testimony, as shown by the abstract in the case, given by the plaintiff herself, in her direct, cross, redirect, recross and redirect examination as to the fact of the accident itself. Only three witnesses were introduced by her.    One, Mrs. Conley, testified to knowing the alleyway and the area, and that while plaintiff had visited her several times, she had only been at work for her about two weeks previous to the accident; knew that plaintiff was in the habit of using this passageway in and out of her house; alley used by all the tenants, their children played in it.    Had told Mr. Weber before the accident that this area was dangerous to the children who played in the alleyway; that he ought to put a gate across its end.    He said he would attend to it. Bakers and milkmen used this alleyway for bread boxes, milk delivery, etc.

A physician, the superintendent of the City Hospital, was sworn as a witness for plaintiff, and while he remembered her being at the hospital, he was not able to remember her particular case or what treatment she received there, or how long she had been at the hospital.    Another witness testified to measurements, about as given above, and that the area opening was on a level with the granitoid walk through the alleyway; that from east to west it was approximately eight feet in length and twenty-seven inches wide and eight feet deep from the granitoid to the bottom.

It was admitted that the defendants are the owners of the premises on Laclede and Cardinal avenues.

This was all of the testimony as disclosed by the abstract bearing on the accident, save that witnesses who testified for plaintiff testified as to her coming to

the store that Sunday night, speaking to them, then "backing out," they said.    They heard her scream and picked her up.    No one saw her fall.    No evidence for defendants or in rebuttal put any different version upon the fact of the accident itself than had plaintiff.

NORTONI, J.—Referring to the facts stated by our learned associate, the Presiding Judge, in the opinion tendered by him for adoption by the court: I find myself wholly unable to concur in the conclusions of law pronounced upon these facts.    The view I have taken of this case and the doctrine of the opinion tendered may be properly presented in a memorandum as follows:

I am persuaded that it was proper to send the case to the jury.    The girl testified that while she knew the areaway was there, she had not noticed it was so close to the door, and it was not such a place as a person of ordinary prudence would not go near.    The opinion holds that the plaintiff should be declared guilty of contributory negligence as a matter of law for the reason the girl knew of the areaway.    Now the mere fact of knowledge touching a danger of this kind is not of itself sufficient to operate negligence as a matter of law. This idea runs through all the decided cases in this State, as I understand them.    Indeed, it has been expressly decided in a case where a lady walked off an embankment and it appeared she was familiar therewith. It is said in that case that the mere fact a person had previous knowledge of a defect or hole in the ground is not conclusive evidence of negligence if she afterwards walked into the same.    The fact should be submitted to the jury with the other evidence, for them to ascertain whether the party exercised that degree of care which would be exercised by an ordinarily prudent person under the circumstances.    [See Smith v. St. Joseph, 45 Mo. 449.]

And this too is the doctrine of the case of Buesch-

ing v. St. Louis Gas Light Co., 73 Mo. 219, cited in the opinion.   I do not understand that portion of the Buesching case quoted by Judge Reynolds to be the doctrine of that case; that is, the nub of the case.   The portion relied upon in the present instance as pointing this plaintiff guilty of contributory negligence as a matter of law, is where Judge HOUGH says in the Buesching case, as follows:   "So that if it were essential in order to sustain the demurrer to the evidence, that it should appear to the court at the conclusion of plaintiff's case that the deceased had knowledge of the opening in question, inasmuch as such knowledge could only appear by way of inference in favor of the defendant from facts which were proven, the demurrer could not be sustained."   Now the opinion reasons as though Judge HOUGH implied by these remarks that if it appeared plaintiff had knowledge of the opening she could not recover.   In fact, those remarks were only preliminary and did not purport to state the law of the case.   The law of the Buesching case on the question of prior knowledge of the opening, is stated on top of page 232.   In discussing the question of a defect or nuisance in or near a highway, and what influence prior knowledge on the part of the plaintiff should have in such case, Judge HOUGH states the law on page 232, as follows:   "In the latter case, no person is required to abandon a convenient or customary route of travel in a city because of dangerous excavations near the highway, unless the use of the way under such circumstances would be inconsistent with the exercise of reasonable and ordinary care.   [Barton v. Springfield, 110 Mass. 131; Snow v. Provincetown, 120 Mass. 580.] And a traveler, if injured thereby, may recover, notwithstanding his knowledge of the existence of the nuisance, provided he was at the time using ordinary care. [Smith v. City of St. Joseph, 45 Mo. 499; Thompson on Negligence, p. 1203, 4, 5, 6, secs. 52 and 53; Shearman

& Redfield on Neg. sec. 414.]" It therefore appears that the Buesching case approves the doctrine of Smith v. St. Joseph, 45 Mo. 499, and that it asserts the doctrine that mere knowledge of itself is not sufficient to charge a party with contributory negligence. In fact, this doctrine runs through all of the cases on the law of negligence, as I understand it. And at page 233, Judge Hough, in speaking of the fact that if Buesching knew of the areaway in the sidewalk, says: "The law is that the deceased was guilty of negligence" if he knew it and did not avoid it, "provided he could have avoided it by the exercise of ordinary care." The result of the authority is, then, as I understand it, this: that knowledge of the areaway is not sufficient to charge the plaintiff with contributory negligence as a matter of law. Therefore, the only question for determination is whether plaintiff would have avoided falling into it by exercising ordinary care on her part. I think that question, in view of the situation, and in view of the plaintiff's testimony that she did not notice the areaway was so close to the door, under the circumstances surrounding the case, ought to be decided by a jury. The circumstances which more or less influence this conclusion, are: first, that the areaway was not a place of imminent and great danger; that is, it was an ordinary affair about which and near which persons of ordinary prudence frequently go. In this respect, the case is distinguishable from those which present imminent and threatening dangers which all persons of ordinary prudence know are likely to entail injuries. For instance, if this were a coal shaft fifty or one hundred feet deep and unprotected, I would say that a person was guilty of contributory negligence as a matter of law for thus inattentively moving about it. But as it was only a small areaway, about which people move or go, it does not present that feature of glaring and imminent danger which is essential under our decisions to infuse the element of negligence as a matter of law.

For the distinction which obtains with respect to declaring negligence as a matter of law and a question for the jury, see Garaci v. Hill-O'Meara Const. Co., 124 Mo. App. 709; Huhn v. Mo. Pac. Ry. Co., 92 Mo. 446, 447. This was not a place of great and imminent dangers, but it was an ordinary affair about which prudent persons moved with more or less carelessness believing it safe to do so. If the danger is one which a prudent person will move about, believing that by the exercise of even great care they are safe in so doing, the question is for the jury. [See Huhn v. Mo. Pac. Ry. Co., 92 Mo. 477.]

Since writing the foregoing memorandum, Judge GOODE has directed me to note him as concurring in the view therein expressed, and suggested that it be filed as the opinion of the court.

As to the other arguments in the brief, it is sufficient to say that we have examined the questions presented and do not find sufficient error in the record to warrant a reversal. In this connection, we invite attention to our statute (sec. 865, R. S. 1899, sec. 865, Mo. Ann. St. 1906), providing as follows: "The Supreme Court, or courts of appeals, shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action." Judge GOODE concurring, the judgment will be affirmed.

Judge REYNOLDS is of the opinion the decision is in conflict with the opinion of the Supreme Court in Buesching v. St. Louis Gas Light Co., 73 Mo. 219. It is therefore ordered that the cause be transferred to that court for final determination.

REYNOLDS, P. J., dissenting (after stating the facts).—Probably the case nearest in line with this, so far as the principle of law controlling cases of this kind is concerned, is the case of Buesching v. The St. Louis

Gaslight Company, referred to and relied upon by coun-
sel for appellants as decided by this court (6 Mo. App.
85), and relied on by counsel for respondent, as de-
cided by our Supreme Court (73 Mo. 219). When the
case was before the Court of Appeals, that court held
that the facts in it raised a presumption of negligence
on the part of the deceased which precluded a recovery.
On appeal to the Supreme Court, the judgment of the
Court of Appeals was reversed.    Judge HOUGH, who
delivered the opinion, said (73 Mo. 219, 1. c. 229) : "It
has been repeatedly decided by this court that it is not
incumbent upon the plaintiff, in the first instance, to
show that he was free from negligence, or in the exer-
cise of ordinary care at the time of receiving the in-
jury complained of, but that the concurring negligence
of the plaintiff is a matter of defense, and the burthen
of showing it is, therefore, upon the defendant.    *If,
however, it appears without any conflict of evidence
from the plaintiff's own case, or from the cross-exami-
nation of his witnesses, that he was guilty of negligence
proximately contributing to produce the injury, it would
be the duty of the court to take the case from the jury,
by declaring as a matter of law, that the plaintiff can-
not recover."*    We know of no better declaration of
the law on the subject as applicable to cases of this
kind than the foregoing, and it has never been ques-
tioned or disturbed by any decision in this State.    Like
the case at bar, the accident occurred in consequence
of an open area or cellarway on a public thoroughfare.
The case differs from the one at bar, however, in this,
that the husband of plaintiff in the Buesching case was
found lying at the bottom of the areaway dead; no one
saw him fall; no one knew how long he had lain there;
there was even a suggestion that he might have been
murdered and thrown there; the theory of homicide,
however, being held by the court to be untenable from
the fact that his personal effects were found on the
body of the deceased and every surface indication tended

to show that he had met his death by falling down into the open area, and knowledge by deceased of the open area rested entirely on presumption. How the accident occurred was left entirely to presumption and conjecture. The Court of Appeals held the presumptions under the facts led to the conclusion of negligence on part of the deceased. This was denied by the Supreme Court. In the case at bar, it is not necessary to resort to presumption. The actual facts of the accident are in evidence.

In the Buesching case the cellarway was an open space on the street, without any protection whatever around it or on either side. In the case at bar the area was open only at one end, and that open end not toward the alleyway, but on the side of the wall, the roadway, passage or space six feet and three inches wide between its rail and the opposite wall, so that persons passing up and down the alleyway were in no danger whatever of falling into this open space. To get into or fall into this area, one would have to go out of their way, unless coming out of or going into the store. It was not on the line of travel of persons coming in from the Cardinal avenue entrance, and would not even be on the line of travel of those coming out of the doorway of the grocery unless they turned toward it, instead of going straight out into the alleyway. That is to say, it was not on the usual path of passage or travel through the alleyway. Therefore, in this respect it differs radically in position from the open area in the Buesching Case. After stating the facts in evidence, Judge HOUGH continues: "In passing on a demurrer to the evidence, the court is required to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor, and if, when received in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained. [Wilson v. Board of Education, 63 Mo. 137.] But the court is not at liberty,

in passing on such demurrer, to make inferences of fact in favor of the defendant, to countervail or overthrow either presumptions of law or inferences of fact in favor of the plaintiff; that would clearly be usurping the province of the jury.    So that if it were essential, in order to sustain the demurrer to the evidence, that it should appear to the court at the close of plaintiff's case, that the deceased had knowledge of the opening in question, inasmuch as such knowledge could only appear by way of inference in favor of the defendant from facts which were proven, the demurrer could not be sustained.".

Applying this to the case at bar and drawing the inferences and conclusions from it, which are so plainly deducible and unmistakably follow, we have in the case at bar the very facts, by uncontradicted evidence, that were absent in the Buesching Case, and which facts, if present in the Buesching Case would have resulted in withdrawing the case from the jury.    In the case at bar, the plaintiff herself admits that she knew of the cellarway, or area; she knew that it was unprotected; she had gone past it hardly an instant before, gone over by exactly the same route and, unmindful of the proximity of the opening, she has walked or backed into it, her only explanation being that she had not realized that it was so near.    This will not do, and if I understand the law announced in the Buesching Case would have warranted, even compelled, the trial judge to have taken the case from the jury.    Plaintiff should not be allowed to shift on to the defendants the responsibility for her carelessness.

Smith et al. v. City of St. Joseph, 45 Mo. 449, is relied on by my learned associates as particularly in point in support of the view they take of this case. Reading that case will show that the facts in it are in no manner analogous to those in the case at bar.    In that case, plaintiff with knowledge of the existence of the excavation, tried to avoid; in this case, plaintiff with

knowledge of the open area carelessly and neg-
ligently stepped into it.    There is no possible
analogy between the facts in the two cases.    The use
of expressions in the Smith Case as applicable to this
case fairly illustrates the danger of the application of
a correct principle to entirely different facts.    The same
remark applies to the application made by my learned
associate of the Buesching Case.    My learned associate
appears to reason on the theory that because Buesching
fell into an open areaway, and the defendants were held
liable, that the plaintiff in this case falling into an open
area, therefore the defendants are liable, and that be-
cause the Supreme Court held in the Buesching Case
that a demurrer to the evidence should not have been
sustained, that it would be error in this case to sustain
the demurrer.

That reasoning, I respectfully submit, destroys and
is directly contrary to the rule announced by the Su-
preme Court, through Judge HOUGH, in the Buesch-
ing Case.    To put it briefly, there was no evidence in
the Buesching Case, that Buesching knew of the pres-
ence of the open area; that knowledge had to be pre-
sumed; there was no evidence as to how he fell into
the area; that had to be presumed.    The court held
that if the positive and uncontradicted facts showed
knowledge of the dangerous opening and that by his own
negligence or carelessness Buesching was killed, the case
should have been taken from the jury.    But if knowl-
edge and acts amounting to carelessness had to be pre-
sumed from the mere fact of the fall, then carelessness
could not be presumed because the facts on which it
might be predicated, rested on mere presumption and
not on evidence.    My contention therefore is that my
learned associates, in allowing the verdict of the jury
to stand in this case, and in holding that the case
should not have been taken from the jury, have disre-
garded the principle underlying all the cases, and tak-
ing the law to be as stated by Judge HOUGH in the

Buesching Case, have gone contrary to the last controlling decision of the Supreme Court. Of course any quantity of cases can be cited where the court holds a case should go to the jury. None of the cases referred to overrule the rule of law announced by Judge HOUGH, as to when a case should be taken from the jury. This case illustrates the danger of following what is sometimes referred to as "case law;" that is to say, looking to the decision in a particular case, rather than to the underlying principle. When the Supreme Court announces a rule, as a principle of law, we are bound by it. When it applies that principle in a given case and reaches a certain result, we are not bound to apply it in another case, to reach a like result, unless the very facts in the case before us are "on all-fours," as it is aptly said, with the case before us, that is, are so nearly analogous as to bring the cases in line. Applied to the facts in this case, I contend that the rule laid down in the Buesching Case as to when a case should be taken from the jury is controlling and as applied to the facts in this case must result in a reversal.

While recognizing as the law, that it is the province of the jury to pass on the evidence and that their verdict is usually binding on the courts, there is the grave and ever present obligation resting on the trial as well as appellate courts, to determine whether the case should go to the jury at all.

Moreover, it is the duty of the appellate as well as of the trial court to see to it that in and by their verdict, the jury have followed the direction of the trial judge, and are supported in or have evidence before them warranting the verdict. In this case, I am so clearly of opinion that the jury not only had no evidence warranting their verdict, but that they disregarded the instructions as to contributory negligence of plaintiff barring her recovery, that I do not think it should be permitted to stand. The jury were told that if they believed from the evidence, "that the plain-

tiff knew, or by the exercise of ordinary care on her part, she would have discovered, prior to said accident, that the areaway or stairway described in the evidence was partly unprotected and unguarded, then the plaintiff cannot recover and your verdict must be for the defendants, even though you may believe that plaintiff was injured by falling into said stairway;" and "that the plaintiff was bound to exercise ordinary care for her own safety. If you find from the evidence that plaintiff did not exercise ordinary care for her own safety, and that such failure of plaintiff to exercise ordinary care for her own safety, if any, contributed to cause the injuries of which plaintiff complained, then the plaintiff cannot recover, and your verdict must be for the defendants."

There was no dispute, no contradictory testimony, over the fact that plaintiff knew of this opening; that she backed or stepped into it, not remembering or realizing, as she says, that it was so close to the door. Her own testimony, to my mind, proves that she came within these two instructions, and should not recover. That being so, I am clearly of opinion not only that the law as announced by Judge HOUGH in the Buesching Case comes into play, and that the court, in refusing to take the case from the jury, acted in disregard of that rule of law and that in affirming this judgment we are in direct conflict with it, but also that the verdict is contrary to the instructions given, and should have been set aside for that, if for no other reason.

Furthermore, as going to the absolute justice of the case, we should not overlook the fact that plaintiff was where she had no business to be on the evening of the accident. It was Sunday evening, about dusk; the store was closed, as it should have been. Two or three people were sitting inside talking. Plaintiff insisted on being admitted, to buy oysters, she says, but when she got in she forgot what she was sent for and

turned back to find out from her employer, when she stepped into the area.

Nor is there any proof that defendants had any occasion to consider the open area dangerous. They were landlords, not tenants in possession, and that they should be mulcted in heavy damages under the facts in this case, seems to me very unjust. They have every right to demand that plaintiff should prove herself free from careless negligence before they are called upon to respond.

Another proposition in the case, in my opinion, calls for reversal.

There were certain photographs in evidence, showing the area and alleyway. Admittedly they were taken after the accident. On one of them hinges, as of a gate, appeared on the post at the side or open end of the area. It was conceded at the trial that no gate had ever been across this end prior to the accident. The court in an instruction, told the jury that they should disregard all evidence, if any, of any gate having been placed on the stairway—that evidence of repairs or alterations made after the accident, is not competent evidence of any negligence on the part of defendants.

In the face of this, counsel for plaintiff, in his closing address to the jury, with the photograph in his hands, said: "Are there—in this picture, sworn to, brought here by them—are there or are there not hinges on that upright there? Don't you see there are?" Counsel for defendant checked counsel for plaintiff and, calling the court's attention to the remark, asked the court to check and correct counsel, whereupon the court said: "The court declines to correct counsel in his argument with reference to the photograph." Exception was duly saved. I think this reversible error.

On the whole case, I think the judgment should be reversed, without a remander of the case, on the refusal of the court to take the case from the jury, and that my learned brothers, in holding to the contrary are in

conflict with the decision of the Supreme Court in the Buesching Case. I therefore request that this cause be certified to the Supreme Court.